JUDGE COFER
delivered the opinion op the court.
The appellants, who alleged that they were.and for many years had been engaged in the towboat and jobbing business, on the Ohio River and its tributaries, brought this action against the appellee to recover the agreed compensation for towing a coalboat containing twenty thousand bushels of coal, from Pittsburgh, Pa., to a place called “the Pumpkin Patch,” above Jeffersonville, in the state of Indiana; and also to recover for an alleged indebtedness on other accounts, not necessary to be stated.
The appellee denied that the coalboat had been delivered at the place where the appellants undertook to deliver it, and alleged that in consequence of the negligence of the appellants the.boat was sunk, and the greater part of the coal was lost; and sought by way of counter-claim to recover damages sustained in consequence of the sinking of the boat.
*701 The law and facts were submitted to the court without the intervention of a jury, and the petition and counter-claim were dismissed. From that judgment the appellants appeal and the appellee prosecutes a crpss-appeal.
The parties disagreed as to the place at which, by the terms of the contract, the coalboat was to be delivered. The appellants contended that it was to be delivered at “the Pumpkin Patch,” and the appellee contended that it was to be delivered at the regular landing of Bonner & Duffy, some distance below “ the Pumpkin Patch.” The appellants also contended that the boat was landed and received by the consignees, and that they took possession and control of it.
On all these questions there was a direct conflict in the evidence, and without reciting it we deem it sufficient to say there was ample evidence to authorize the finding of the court, and that this court will not enter into a minute examination and analysis of the evidence in order to determine whether there may not be a preponderance in favor of the appellants.
The judgment dismissing the petition must therefore be affirmed.
The court, in dismissing the appellants’ petition, decided that they had not delivered the tow at the place agreed upon, and thus was established one of the facts necessary to sustain the counter-claim.
If the boat was lost in consequence of the negligence of appellants, there should have been a judgment against them on the counter-claim; but as the court dismissed the counterclaim, and the evidence on the question of negligence was conflicting, we must presume that the court found there was not such negligence as would of itself render the appellants liable. for the loss of the boat. (Coleman v. Meade, 13 Bush, 358.)
But the appellee contends that the appellants, as owners of the towboat, are liable as common carriers, and this presents the only question of difficulty in the case.
*702 Whether .the owners of steamboats, who undertake to tow other crafts, are common carriers, is an open question in this state, and the authorities on the subject are in conflict.
The Supreme Courts of Louisiana and North Carolina have decided that they are. (Smith v. Pierce, 1 La. 349; Adams v. N. O. Steamboat Co., 11 La. 46; Walston v. Myers, 5 Jones, 174.)
The Supreme Courts of California and New Jersey, while deciding the cases before them upon other grounds, and waiving this question as unnecessary to the decision of the cases, have intimated similar views. (White v. Mary Ann, 6 Cal. 470; Ashmore v. Penn. Steam-tow & Transportation Co., 4 Dutcher, 180.)
The Supreme Courts of New York and Pennsylvania hold the opposite doctrine. (Caton v. Rumney, 13 Wend. 387; Alexander v. Green, 3 Hill, 1; Wells v. Steam Nav. Co., 2 Comst. 204; Leonard v. Hendrickson, 18 Pa. St. 40.)
We do not find that any of the cases have entered into a discussion of the principles governing the subject, and in this state of the authorities we feel at liberty to treat the question as res integra, and to decide it upon such principles as from its nature ought to govern in its solution.
The authorities, both elementary and judicial, recognize two kinds or classes of carriers, viz. private, carriers and common carriers.
All persons who undertake, for hire, to carry the goods of another belong to one or the other of these classes. The former, like ordinary bailees for hire, are only liable for the injury or loss of the goods intrusted to them when it results from the failure of themselves or their servants to exercise ordinary care. The latter are liable as insurers for all injury or loss not resulting from the act of God or of the public enemy. The former are not bound to carry for any person unless they enter into a special agreement to do so. The latter *703 are bound to carry for all who offer such goods as they are accustomed to carry, and tender reasonable compensation for carrying them; and if they refuse to perform their obligation in this respect, they are liable to respond in damages.
Private carriers are such as carry for hire, and do not come within the definition of a common carrier. (Angelí on Carriers, sec. 46.)
If, then, wé ascertain whether the owners of steam towboats come within the definition, we will have reached the conclusion sought.
“We take a common carrier to be one who offers to carry goods for any person between certain termini, or on a certain route; and he is bound to carry for all who tender him goods and the price of carriage, and insures the goods against all loss but that arising from the act of God or of the public enemy, and has a lien on the goods for the price of carriage. These are essentials, and though any or all of them may certainly be modified, and, as we think, may be controlled by express agreement, yet if either of these elements is wanting from the relation of the parties, without such agreement, then we say the carrier is not a common carrier, either by land or water.” (Parsons on Shipping and Admiralty, vol. 1, p. 245.)
“ A common carrier differs from a private carrier in two important respects: 1. In respect of duty, he being obliged by law to undertake the charge of transportation, which no other person, without a special agreement, is. 2. In respect of risk. A common carrier is regarded by the law as an insurer,” etc. (Angelí on Carriers, sec. 67.) .
“ To bring a person within the description of a common carrier, he must exercise it as a public employment; he must undertake to carry goods for persons generally; and he must hold himself out as ready to engage in the transportation of goods for hire as a business, not as a casual occupation pro hoc vice” (Story on Bailments, sec. 495.)
*704 “ Common carriers undertake generally, and for all people indifferently, to convey goods and deliver them at a place appointed, for hire, and with or without special agreement as to price.” (2 Kent, 598.)
In Fish v. Chapman (2 Kelly, Ga. R., p. 353) the question was whether Fish was a common carrier. The court said: “ The undertaking (of the carrier) must be general, and for all people indifferently. The undertaking may be evidenced by the carrier’s own notice, or practically by a series of, acts, by his known habitual continuance in his line of business. He must thus assume to be the servant of the public, he must undertake for all people.”
And again: “ One of the obligations of a common carrier, as we have seen, is to carry the goods of any person offering to pay his hire. With certain specific limitations this is the rule. If he refuses to carry, he is liable to be sued, and to respond in damages to the person aggrieved, and this is perhaps the safest test of his character.” (See to the same effect Jones on Bailments, 3d Lon. ed., p. 103, d, note.)
The liability of common carriers is upon contracts implied by law. No one can become bound by such contracts unless he has either consented to be bound in that character, or has so acted as to justify the belief that he intends to be so bound. Without actual consent or conduct, from which it can be presumed, no one can become liable as a common carrier any more than upon any other character of contract. The law applicable to them is extremely rigorous. It is founded in public policy, and not in abstract justice.
They will not be allowed to discharge themselves from liability for goods injured or lost, by showing by the most irrefragible evidence, that neither they or their servants were at fault, nor even by showing that they did all that human care,, skill, and vigilance could to avert the casualty. The harsh and inflexible answer is, you are common carriers, and *705 must be held in fault, notwithstanding the fullest and most convincing evidence that you are without blame.
When a person has assumed the character of a common carrier, either by expressly oifering his services to all who will hire him, or by so conducting his business as to justify the belief on the part of the public that he means to become the servant of the public, and to carry for all, he may be safely presumed to have intended to assume the liabilities of a common carrier, for he was bound to know that the law would so charge him, and knowing, must have intended it.
But in order to impress upon him the character, and impose upon him the liabilities of a common carrier, his conduct must amount to a public offer to carry for all who tender him such goods as he is accustomed to carry.
When this is the case, then those who tender him goods to carry accept his offer, and he becomes bound to carry them; and if he refuses to do‘ so, “having convenience,” and being tendered satisfaction for the carriage, he is liable to an action, unless he has reasonable excuse for his refusal. (Jackson v. Rogers, 2 Showers, 327; Riley v. Horne, 5 Bing. 217; 1 LdRaymond, 646; 2 Kent, 598.)
This duty is inseparable from the character of a common carrier. By his conduct he induces the public to rely upon him to do their carrying. He is continually offering his services, and when his offer is accepted, he has no right to refuse performance.
But when he has not held himself out in such way as to amount to an offer to carry for all shippers, no one has a right to depend upon him or to demand that, as matter of duty, he shall carry his goods, and he may refuse, though he has room to spare, and his charge for carriage be tendered.
If he is bound to. carry for all .who offer, then he is a common — a public carrier — and whatever he receives as a common carrier, he is bound for in that character. The duty *706 to receive and the liability to account are correlative, and a carrier must receive and transport in the same character.
If he receives as a private carrier he carries and is liable in that character, and that only; he is bound according to the t,enor of his contract. If he receives as a common carrier he carries and is liable in that character, unless he has contracted for a modified liability.
Our conclusion then is, that a carrier of goods is not liable as a common carrier, unless he was under a legal obligation to accept the goods and carry them, and would have been liable to an action if, without reasonable excuse, he had refused to receive them; and that he could not be liable to such an action, unless he had expressly and publicly offered to carry for all persons indifferently, or had, by his conduct and the manner of conducting his business, held himself out as ready to carry for all.
We are aware that the rule has hot always, and perhaps not generally, been thus restricted. But as we have already said, the law applicable to common carriers is peculiarly rigorous, and it ought not to be extended to persons who have not expressly assumed that character, or by their conduct and from the nature of their business justified the belief on the part of the public that they intended to assume it.
As said by Chief Justice Marshall, in Boyce v. Anderson, 2 Peters, 150, “Though to the extent to which the law has been applied, we admit its necessity and its policy, we do not think it ought to be carried farther or applied to new cases.” .Tested by the principles we have laid down, it is clear the appellants are not chargeable as common carriers. They are not shown to have held themselves out to the public as ready to tow craft for all who might seek their services. They are engaged in a business which in its nature is not such as to entitle the public to suppose they would tow for all who might desire to hire them. They are not shown to have operated on *707 a definite route or between established termini. They operate on the Ohio River and its tributaries, and from the facts in the case there is no reason to suppose that the public looked to them as bound to carry without a special agreement, or that they ever intended to undertake to do so, or to carry for any one without a special contract. They made such a contract with the appellee, and on the facts of the particular case, as well as from the nature of their business, “towing and jobbing,” they should be deemed private and not common carriers, and consequently they were only liable in case they failed .to exercise ordinary care and skill considering the nature of their business, and the court having found that they did not fail in this respect the judgment must be affirmed.
This conclusion is not inconsistent with the Louisiana cases quoted in the beginning of this opinion. From the facts stated in the opinion in the first of those cases it appears that boats engaged in towing vessels to and from New Orleans and the mouths of the Mississippi “ are publicly offered to all persons who choose to hire them.” This made them common carriers. Having publicly offered their services to all, all had a right to rely upon them and to demand their services when desired, and the owners of such boats would be liable to an action if they refused, without reasonable excuse, to tow when applied to for the purpose.
In the North Carolina case no reasons are given for the decision, and no authorities are cited in support of it, and it stands alone, so far as our researches have extended, in holding that the owners of steamboats are common carriers from the simple fact that they are accustomed to engage in towing other craft.
Judgment affirmed on the original and cross-appeal.