Case 93.—ACTION BY BASSETT & STONE AGAINST THE ABERDEEN COAL AND MINING CO., CARRIERS, FOR THE LOSS OF A LOT OF BRICK.—June 13.

## Bassett & Stone v. Aberdeen Coal & Mining Co.

Appeal from Butler Circuit Court.

B. W. Bradburn, Circuit Judge.

Judgment for defendant. Plaintiffs appeal. Reversed.

Carriers—Tow Boats—Carrying Goods for Hire—Liability for Loss—Instructions to Jury—Evidence—Question for Jury.

1. Carriers—Tow Boats—Carrying Goods for Hire—Liability for Loss—In an action by a shipper of a lot of brick against defendant company, who was doing a general towing business on Green river, and who agreed to carry the brick for hire and which was lost while being so carried by striking a hidden snag in said river, Held—That while defendant's boats were not common carriers at all times, still if on certain trips when they had not towing to do they held themselves out as ready to carry for all, they would be common carriers for the time being.

2. Same—Instructions to jury—On the trial of the case the jury should have been instructed that if defendant had expressly and publicly offered to carry for all persons, indifferently, or had by its conduct and the manner of conducting its business held itself out as ready to carry for all on such trips as the boat was then making, then it was a common carrier

Bassett & Stone v. Aberdeen Coal & Mining Co.

and was liable, although there was no negligence on the part of the defendant in the loss of the brick, but if defendant had not offered to carry for all persons, indifferently, or by its conduct or the manner of conducting its business held itself out as ready to carry for all, but only in each case acted in consequence of a special employment, it was not a common carrier and was not liable unless the bricks were lost by its negligence.

3. Evidence—Question for Jury—Where there was any evidence tending to show that the defendant company was a common carrier the case should have been submitted to the jury to determine whether the defendant had assumed the character of a common carrier.

J. S. WORTHAM, R. L. GREENE and HOWARD & GARDNER for appellants.

In the case at bar the proof tends to show that appellee was a common carrier of goods and merchandise on upper Green river. It also appears that appellee was a common carrier of freight by towing on Green river and also between Evansville, Indiana, on the Ohio river, and Rochester, Kentucky, on Green river. Its manner of conducting its business on Green river and its advertisement for business show that it proposed to serve the public generally. It was not necessary that appellee should make regular trips with its boats or to travel only between fixed termini. It was the owner of a number of boats, named on their letter heads and advertised thereby, and it served the public with these boats on all occasions where its services were brought into demand. Under the allegations of the pleadings and under the proof the court was not authorized in taking the question, whether or not appellee was a common carrier, from the jury. The instructions A. and B., offered by appellants and refused by the court, properly covered the law on the subject.

## AUTHORITIES CITED.

Who is a common carrier. (Varble v. Bigley, 14 Bush, 698; Fish v. Chapman, 2 Kelly (Ga.), 353; Farley v. Lavery, 21 Ky. Law Rep., 1252; Gordon v. Hutchinson, 37 Am. Dec., 464; Cayo v. Pool's Assignee, 21 Ky. Law Rep., 1600; Hutchinson on Carriers, secs. 57b, 58 and 58a; Chevallier v. Straham, 2 Texas, 115, s. c. 47 Am. Dec., 639; Riley v. Horne, 5 Bing., 217; Black's Law Dictionary, title "Common Carriers;" 2 Kent Com., 597; Robertson & Co. v. Kennedy, 2 Dana, 430; Lee, &c. v. Burgess & Graham, 9 Bush, 652; 2 Parsons on Contracts, 163; Hall & Co. v. Renfrow, 3 Metcalf, 54; Angell on Law of Contracts, sec. 82.)

A. THATCHER and W. A. HELM for appellees.

1. Appellants complain because the court refused to instruct the jury that appellees were liable if they believed they were common carriers. We submit that the court on this point exercised its proper discretion. If the evidence was insufficient to support a verdict the jury should not be allowed to waste time in considering it.

2. If they were not common carriers they were private carriers, and as such, under the law, were only liable for failure to exercise ordinary care and skill, considering the nature of the business; and upon this point the proof shows the loss was caused by an unavoidable accident, and the jury so decided.

### CITATIONS.

14 Bush, 698, Varble and Others v. Bigley; Lawson on Bailments, sec. 85, Ed. 1895, also sec. 83; 81 U. S., 774, Str. William H. Webb; 38 Fed. Rep., 611; 24 Fed. Rep., 188; 80 Fed. Rep., 153; 25 U. S. Cir. Ct. of Appeals Rep., 318; 94 U. S., 494, case of the "Margaret;" 120 U. S., 327, case of the L. P. Dalton; 66 Fed. Rep., 571; 13 U. S. Cir. Court of Appeals, 641; 14 Wallace, 414; 99 Fed. Rep., 1004; 55 Fed. Rep., the "Hercules;" 31 Cir. Ct. of Appeals Reports, 308; 87 Fed. Rep., 938; 1 Shearman & Redfield on Negligence, sec. 57; Wells v. Steam Nav. Co., 2 Comst., 204; Alexander v. Green, 3 Hill, 9; 51 Cir. Ct. of Appeals Reports, 592; 113 Fed. Reports, 1017; 9 Fed. Rep., 460, the "Nathan Hale;" 93 Fed. Rep., 833, the "Belle;" 39 C. C. A., 604; 35 C. C. A., 623.

OPINION BY CHIEF JUSTICE HOBSON—Reversing.

The Aberdeen Coal & Mining Company operated two boats—the Carson and I. N. Hook—on Green River. Bassett & Stone made a contract with the company to bring a lot of brick from Evansville to Rochester for $160, the brick to be loaded by them at Evansville on a barge belonging to it, and then to be towed by it up to Rochester. The contract was made by telephone, and afterwards confirmed by letter. While the boat I. N. Hook was going up the river the barge struck a hidden snag and was sunk. Bassett & Stone then filed this suit against the company to recover for the loss of the brick, alleging that

it was a common carrier, and that the brick were lost by its negligence. The allegations were denied, and on final hearing the court refused to submit to the jury whether the defendant was a common carrier, and on the question of negligence the jury found for the defendant. The plaintiffs appeal.

The only question which need be considered on the appeal is whether there was sufficient evidence to go to the jury on the question whether the defendant was a common carrier. The proof on this subject is as follows:

J. L. Dent testified as follows: "I requested plaintiffs to ship their stuff from Evansville to Rochester with defendant because I had done considerable shipping with them on Green river, and the defendant had requested me to get the company any business I could. * * * I did considerable shipping with the defendant on the Hook and Wilford and other boats on Green river. At the time I represented a fertilizer company. I shipped my fertilizers on their boats at so much per ton, to be delivered at different points on Green river; freight being paid by the parties receiving it in some cases and by me in some cases. I have known the defendant's boat to carry passengers, flour, chickens, eggs, oil and other goods and merchandise for merchants doing business along the river."

Noah Daugherty made these statements: "I am wharfmaster at Morgantown Ferry. The defendant operated towboats on Green river up to the time they went out of the river. They did the business of common carriers. They brought freight to my wharf and took freight from there. They did this in 1900 and 1901. The boats were the Hook and Carson." Cross-examined: "Witness said they had no regular times for coming and going, no fixed terminals. Their

chief business was towing ties and coal. Most of freight brought by defendants was in empties returning from towing coal to Bowling Green.''

W. H. Fuller testifies as follows: ''I was wharfmaster at Morgantown wharf from — till —, 19,—. I know the defendant company. They were doing business on Green river between Evansville and Bowling Green, and operated towboats. The I. N. Hook and J. T. Carson were common carriers. They brought freight to my wharf from Bowling Green and Evansville, Ind. They received all the freight offered to them at my wharf.'' Cross-examined: ''I remember they brought some drummer's trunks on a barge. They brought some brick for the town, and charged no freight for same. They would not land and take on freight and passengers regularly like other boats, but only occasionally. Their chief business was towing ties.''

In appellee's letter head was this: ''Towing a specialty,'' and in letter to appellants it said: ''This rate we gave you is confidential, and we would not like to hear it spoken of by outsiders.''

The proof for defendant by J. D. Render was as follows: ''I am secretary and treasurer of the Aberdeen Coal & Mining Company. We owned the Hook and Carson. They were towboats, and operated on Green and Barren rivers. We did a general towing business. We only took freight by contract, and carried it on barges. We did not hold ourselves out to the public to take freight for all who wanted to ship, but only by private contract. George Fletcher applied to me to tow the freight sued for. He talked to me by telephone from Rochester. I offered to do it for $160, he to be responsible for barge and cargo. The contract was finally settled through Mr. Walker, my bookkeeper. I told him he

was to be responsible for cargo and barge, and he (Fletcher) wanted to know if that was customary. I told him it was. Fletcher said he would let me know about it. I never talked to Fletcher at Leitchfield. I told Mr. T. F. Walker about it and went West, and Mr. Walker closed the trade. When I came home I learned the barge and material had been sunk. My company is not a common carrier. At the time the contract was made with plaintiff, we were under contract with the Evansville Grain Company to do all their towing, and were then engaged in towing their ties from Green and Barren rivers to Evansville, Ind. We had no fixed termini or times of arrival and departure. We did all towing by private contract. When not rushed by said grain company, we would sometimes bring some freight from Evansville in empties. We had no regular stopping places, but went direct to the tie yards, and there loaded our barges. * * * We did carry some fertilizer in barges to upper Green river for Mr. Dent. We carried same in empties, and in large quantities. We brought some trunks from Woodbury to Morgantown to accommodate some drummers." Cross-examined: "I have carried freight to Morgantown on several occasions with these boats along about the time the barge was sunk. I carried chickens and eggs from Millshed, Threlkel, Edgars and Lock No. 5—all these landings, and took freight to them the same summer that the barge was sunk, and had done so before. I carried fertilizer for —————— before the barge was sunk by my boat."

Grace Davis, the pilot, testified as follows: "Occasionally she would tow a barge of stuff for others, in order to fill out her tow; and on this occasion she was towing a barge of brick. This occurred only a few times."

Several other witnesses on behalf of the defendant gave in substance the same evidence, stating that the boats only carried occasionally a barge of stuff to fill out their tow, and that they were engaged by the Evansville Grain Company altogether.

In Varble v. Bigley, 77 Ky., 698, 29 Am. Rep., 435, it was held that a towboat is not a common carrier, but in that case the boat which was sought to be held liable had been simply hired to move some coal barges belonging to the plaintiff. The boat was simply furnishing the motive power. In the case before us the barge belonged to the defendant. It is not easy to see why there should be a distinction between freight put on the steamboat Hook and freight put on the barge which it propelled, both being the property of the defendant, and controlled by it. Whether it would carry the freight on the steamboat or on the barge was for it to determine, and its liability in either case will depend upon whether it was acting as a common carrier or a private carrier for hire. In the case referred to, the court, after examining the authorities, thus laid down the rule for determining whether a person is chargeable as a common carrier: "When a person has assumed the character of a common carrier, either by expressly offering his services to all who will hire him or by so conducting his business as to justify the belief on the part of the public that he meant to become the servant of the public, and to carry for all, he may be safely presumed to have intended to assume the liabilities of a common carrier, for he was bound to know that the law would so charge him, and, knowing, must have intended it. But, in order to impress upon him the character and impose upon him the liabilities of a common carrier, his conduct must amount to a public offer to carry for all who tender him such

goods as he is accustomed to carry. When this is the case, then those who tender him goods to carry accept his offer, and he becomes bound to carry them; and if he refuses to do so, 'having convenience,' and being tendered satisfaction for the carriage, he is liable to an action, unless he has reasonable excuse for his refusal.''

After elaborating on this the court thus summed up the matter: ''Our conclusion, then, is that a carrier of goods is not liable as a common carrier, unless he was under a legal obligation to accept the goods and carry them, and would have been liable to an action if, without reasonable excuse, he had refused to receive them; and that he could not be liable to such an action unless he had expressly and publicly offered to carry for all persons indifferently, or had, by his conduct and the manner of conducting his business, held himself out as ready to carry for all. We are aware that the rule has not always, and perhaps not generally, been thus restricted. But, as we have already said, the law applicable to common carriers is peculiarly rigorous, and it ought not to be extended to persons who have not expressly assumed that character, or by their conduct and from the nature of their business justified the belief on the part of the public that they intended to assume it.'' This case is in accord with the great weight of authority. (Hutchinson on Carriers, secs. 47-57.)

Appellants rely upon Gordon v. Hutcherson (Pa.), 37 Am. Dec., 464, Chevallier v. Strahan (Tex.), 47 Am. Dec., 639, and the cases therein cited. But these cases are exceptional, and not in keeping with the general current of authority (Hutchinson on Carriers, secs. 49, 52), and are the authorities referred to by the court in Varble v. Bigley when it said: ''We are aware that the rule has not always, and perhaps not

generally, been thus restricted." We regard this case as settling the rule in this State.

The case of Robertson v. Kennedy, 2 Dana, 430, 26 Am. Dec., 466, is not in conflict with it, for in that case the plaintiff introduced proof showing that the defendant was in the habit of hauling for hire for all who applied to him. The same is true of the case of Farley v. Lavary, 107 Ky., 523, 21 Ky. Law Rep., 1252, 54 S. W., 840, 47 L. R. A., 383.

After collecting a large number of cases, Hutchinson on Carriers, sec. 55, thus states the rule: "These cases undoubtedly state the law as it is settled in England and generally understood in this country, and it would seem clear that no one should be treated as a common carrier unless he has in some way held himself out to the public as a carrier in such manner as to render himself liable to an action if he should refuse to carry for any one who wished to employ him in the particular kind of service which he thus proposes to undertake; otherwise he does not come within the description, nor can he be subjected to the liability of the common carrier when the goods have been lost without negligence."

The question we are to determine is whether under this rule there was any evidence that the defendant held itself out to the public as a carrier in such a manner as to render it liable to an action if it had refused to carry the plaintiff's brick when applied to for that purpose. While one of the witnesses states that the boats did the business of common carriers, and another states that they were common carriers, this seems a mere expression of an opinion of law. The witnesses may have used the words in their popular sense, meaning that the boats carried for the public generally or without distinction. But, however this may be, the court must determine the law from the

facts stated. The proof for the plaintiffs shows that the defendant's boats carried passengers, produce and merchandise; also that they received all the freight offered them at Morgantown, most of the freight being brought in empties as they returned from towing coal. On the other hand, the proof for the defendant is to the effect that the boats had no termini or times of arrival or departure; that they did all towing by private contract, and only worked for others when they had no work to do for the Evansville Grain Company, and only did such work as they saw fit to take. Although the boats were not common carriers at all times, still if, on certain trips, when they had no towing to do, they held themselves out as ready to carry for all, they would be common carriers for the time being.

The rule is thus stated in 6 Cyc., 366: "A common carrier is one who holds himself out as ready to engage in the transportation of goods for hire as a public employment, and not as a casual occupation. It is sometimes said that one who undertakes for a single occasion only to carry goods for any person who desires to employ him for that occasion is a common carrier for that transportation. But the cases of this kind will be found to be those in which, whilst the business of carriage is not the exclusive, or perhaps the principal, business of the one sought to be charged as a carrier, it is incidentally his business for the time being. In general, the liability of carrier does not attach to one who does not hold himself out as pursuing that business, but in the particular case, and in each particular case, acts only in consequence of a special employment."

Under the rule that if there is a scintilla of evidence the question is for the jury, we conclude that under the evidence the jury should have been left to.

determine whether the defendant had assumed the character of a common carrier. There was evidence on the part of the plaintiffs, in view of the amount of carrying which it was shown the defendant did, from which the jury might have inferred that it held itself out as offering to carry for the public, or as ready to carry for all. The barges were brought down the river loaded with ties, and would be returned empty unless loaded with freight. The fact that the defendant requested the witness Dent to get the company any business he could must be taken in connection with the letter head. ''Towing a specialty.'' Although the defendant did not hold itself out at all times as a common carrier, there was some evidence from which the jury might have found that such was its business for the time being. (Robertson v. Kennedy, 2 Dana, 430, 26 Am. Dec., 466; Farley v. Lavary, 107 Ky., 523, 21 Ky. Law Rep., 1252, 54 S. W., 840, 47 L. R. A., 383.)

The court should have instructed the jury that if the defendant had expressly and publicly offered to carry for all persons indifferently, or had by its conduct and the manner of conducting its business held itself out as ready to carry for all on such trips as the boat was then making, then it was a common carrier, and they should find for the plaintiffs, although there was no negligence on the part of the defendant in the loss of the brick; but if it had not offered to carry for all persons indifferently, or by its conduct or the manner of conducting its business held itself out as ready to carry for all, but only in each case acted in consequence of a special employment, it was not a common carrier, and was not liable, unless the bricks were lost by its negligence.

Judgment reversed, and cause remanded for a new trial and further proceedings consistent herewith.