PUBLIC SERVICE COMMISSION, SECOND DIST., v. HURTGAN.

(Supreme Court, Special Term, Niagara County.   August, 1915.)

1. CARRIERS ⬥⟾5—REGULATION—CONSENT OF PUBLIC AUTHORITIES.

Laws 1915, c. 667, §§ 25, 26, enumerating persons and corporations subject to the Public Service Commissions Law, and requiring the consent of the municipal authorities and a certificate from the Public Service Commission, certifying to the public convenience and necessity for the establishment of common carriers, requires such consent for the operation in a city of either a bus line, a stage route, a motor vehicle line or route, a vehicle in connection with a bus line, a stage route, a motor vehicle line or route, a vehicle carrying passengers at a rate of fare of 15 cents or less for each passenger within the limits of a city, or a vehicle carrying passengers in competition with another common carrier, which is required by law to obtain the consent of the local authorities of said city to operate over the streets thereof.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 3, 4, 7; Dec. Dig. ⬥⟾5.]

2. CARRIERS ⬥⟾4—REGULATION—WHAT CONSTITUTES COMMON CARRIER.

A person operating for hire a bus line of motor vehicles for the transportation of freight and passengers from a city to points without the city, and operating in connection therewith, within the city limits, a motor vehicle connected with a bus line, as a feeder, connection, solicitor, and aid to the system, is a common carrier of passengers for hire within the city, and must obtain the consent and certificate prescribed by Laws 1915, c. 667, §§ 25, 26.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1, 462–478; Dec. Dig. ⬥⟾4.]

3. CARRIERS ⬥⟾5—REGULATION—CONSENT OF PUBLIC AUTHORITIES.

Laws 1915, c. 667, §§ 25, 26, requiring enumerated common carriers to obtain the consent of the municipal authorities and a certificate of necesity from the Public Service Commission, when operating within the city limits and charging a fare of 15 cents or less for each passenger, applies to a common carrier for hire within a city, although he does not carry passengers at the rate specified.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 3, 4, 7; Dec. Dig. ⬥⟾5.]

Application by the Public Service Commission, Second District, for an injunction restraining Burt G. Hurtgan from operating a motor vehicle line in violation of Laws 1915, c. 667.   Writ granted.

Frank H. Mott, of Jamestown, for plaintiff.
Morris Cohn, Jr., of Niagara Falls, for International Ry. Co.
Earl & Earl and S. W. Dempsey, of Niagara Falls, for defendant.

BROWN, J.   The defendant operates a bus line of motor vehicles for the transportation of passengers and freight from the station of the International Railway, in the city of Lockport, easterly along Main street to East avenue; thence easterly along East avenue to Vine street; thence northerly along Vine street to Market street; thence along Market street to Lake avenue; thence along Lake avenue to the northerly line of the city of Lockport (all of which route is within the city of Lockport), and from the city line along the creek road to Olcott,

⬥⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a small village upwards of 10 miles north of Lockport, on Lake Ontario. The return trip covers the same route to the International Railway Station in the city of Lockport. The defendant uses in such business two or more motor vehicles, one carrying 12 passengers and one carrying 22 passengers, making nine round trips a day. In such operations he receives passengers within the city of Lockport only for transportation to points outside the city, and discharges within the city of Lockport only passengers that have been transported from Olcott and points beyond the city limits. Within the city of Lockport he maintains or advertises bus line stations at Kenmore Hotel, at Opera House Corner, and at Vine and East avenue. For such service the defendant charges the following fares: Round trip, Lockport-Olcott, 50 cents; round trip, Lockport-Burt, 40 cents; round trip, Lockport-Newfane, 35 cents; round trip, Lockport-Corwin, 30 cents; round trip, Lockport-Wrights, 25 cents. No separate charge is made for transporting passengers within the city of Lockport, the fare charged being to destination, irrespective of the point in the city of Lockport where the passenger is received. For the privilege of so operating his bus line or motor vehicle route the defendant has not applied for or received the consent of the authorities of the city of Lockport. The International Railway Company operates a street railway from its station on Main street, in the city of Lockport, through Main street and East avenue to the village of Olcott, for which privilege it has received the consent of the authorities of the city of Lockport, and the operation of the motor vehicles of the defendant being in claimed competition with the business of the International Railway Company, that company voluntarily appeared and was made a party to these proceedings.

[1] The Public Service Commission and the International Railway Company assert that the defendant is carrying on his business of a common carrier within the city of Lockport in violation of chapter 667 of the Laws of 1915, in that he has failed to procure the consent of the local authorities of the city therefor, and has failed to procure a certificate from the Public Service Commission, certifying to the necessity and public convenience of such business, as required by law. The defendant asserts that he is not a common carrier for hire within the city of Lockport and is not amenable to the requirements of chapter 667 of the Laws of 1915. Chapter 667 of the Laws of 1915 is entitled—

"An act to amend the transportation corporations law, in respect to stage routes, bus lines and motor vehicle lines carrying passengers for hire in cities."

Section 25 of the Transportation Corporations Law, as amended, reads:

"Additional Persons and Corporations Subject to the Public Service Commissions Law.—Any person or any corporation who or which owns or operates a stage route, bus line or motor vehicle line or route or vehicles described in the next succeeding section of this act wholly or partly upon and along any street, avenue or public place in any city shall be deemed to be included within the meaning of the term 'common carrier' as used in the Public Service Commissions Law, and shall be required to obtain a certificate of convenience and necessity for the operation of the route or vehicles proposed to be oper-

ated, and shall be subject to all the provisions of the said law applicable to common carriers."

Section 26, as amended, reads:

"Consent Required.—No bus line, stage route nor motor vehicle line or route, nor any vehicle in connection therewith, nor any vehicles carrying passengers at a rate of fare of fifteen cents or less for each passenger within the limits of a city or in competition with another common carrier which is required by law to obtain the consent of the local authorities of said city to operate over the streets thereof shall be operated wholly or partly upon or along any street, avenue or public place in any city, nor receive a certificate of public convenience and necessity until the owner or owners thereof shall have procured, after public notice and a hearing, the consent of the local authorities of said city, as defined by the railroad law, to such operation, upon such terms and conditions as said local authorities may prescribe," etc.

It is plain that certain motor vehicles cannot be lawfully operated in a city without obtaining the consent of the local authorities and a certificate from the Public Service Commission certifying to the public convenience and necessity thereof. It is believed that the statute requires such consent for the operation in a city of either: (a) A bus line; (b) a stage route; (c) a motor vehicle line or route; (d) a vehicle in connection with a bus line, a stage route, a motor vehicle line or route; (e) a vehicle carrying passengers at a rate of fare of 15 cents or less for each passenger within the limits of a city; (f) a vehicle carrying passengers in competition with another common carrier which is required by law to obtain the consent of the local authorities of said city to operate over the streets thereof. The statute is that to lawfully operate any one of the above six specified lines, routes, or vehicles in a city the consent of the local authorities and the certificate of the Public Service Commission must be first obtained, provided such line, route, or vehicles are engaged in the business of carrying passengers for hire in the city.

[2] While it is true that the defendant does not exact a separate fare for any part of the transportation that is within the city of Lockport, yet it is true that for transporting a passenger from any of three advertised stations within the city to the village of Olcott and return the defendant exacts a fare of 50 cents. The service rendered is partly performed in the city. The fare exacted is from or to any point in the city on the route covered to or from the outside point, as the case may be. The advertised rate of fare:

"Round-trip Lockport-Olcott 50c. * * * Tickets for sale at Kenmore Hotel * * * in Lockport, J. C. Ulrich at Olcott. * * * Bus Line Station Lockport—Kenmore Hotel, Opera House Corner, Vine and East Avenue, Olcott J. C. Ulrich's Restaurant"

—means that the defendant will transport a passenger from the Kenmore Hotel, Opera House Corner, or Vine and East avenue, in the city of Lockport, to J. C. Ulrich's restaurant in Olcott, and return the passenger to the Kenmore Hotel, Opera House Corner, or Vine and East avenue, as the passenger may desire, for 50 cents. That certainly is the carrying of a passenger for hire, and it is beyond dispute that to so carry a passenger by means of a motor vehicle is the operation thereof wholly or partly upon or along a street in the city of Lockport.

How long would it take a jury to find as a fact upon the evidence that the defendant was carrying a passenger for hire who boarded his motor vehicle at the Kenmore Hotel and was injured through slight negligence of the defendant at the Opera House Corner, all in the city of Lockport?

[3] The defendant's contention that because he does not carry passengers at a rate of fare of 15 cents or less for each passenger within the limits of a city he is not amendable to the other provisions of the statute cannot be sustained.

A finding cannot be made that the defendant operates a vehicle carrying passengers in competition with the International Railway Company within the city. Whatever competition there may be is relative solely to traffic between the city and points outside.

The defendant does operate for hire in the city of ·Lockport a bus line; he operates in the city a stage route; he operates in the city a motor vehicle line or route; he operates in the city a motor vehicle connected with a bus line, a stage route, and a motor vehicle line or route—all of which are feeders, connections, inducements, advertisers, solicitors, aids to and a part of his system of carrying passengers for hire from Lockport to Olcott. He is a common carrier of passengers for hire in a city, and is required to obtain the consent and certificate essential to the lawful carrying on of his business.

Injunction awarded the plaintiff restraining the defendant from operating his motor vehicles and carrying passengers for hire within the city of Lockport.