[No. 14455.   Department One.   April 16, 1918.]

FRANK CUSHING et al., Appellants, v. JOHN B. WHITE,
Prosecuting Attorney for Spokane County,
et al., Respondents.[1]

CARRIERS — WHO ARE COMMON CARRIERS — TAXICAB COMPANIES.
Owners of automobiles driven for hire at so much per hour or trip,
having fixed stands for prospective customers, and transporting
passengers from place to place, although without any fixed routes,
schedules, or rates, and reserving the right to refuse transportation,
are common carriers and so subject to regulation under Rem. Code,
§ 5562-37 et seq.

Appeal from a judgment of the superior court for
Spokane county, Kennan, J., entered January 6, 1917,
upon findings in favor of the defendants, in an action
for an injunction.   Affirmed.

McCarthy & Edge, for appellants.

John B. White and William C. Meyer, for respond-
ents.

WEBSTER, J.—This action was brought by appellants
to enjoin respondents from enforcing as against them
the provisions of chapter 57, Laws of 1915, p. 1227
(Rem. Code, § 5562-37 et seq.), entitled,

"An act relating to and regulating common carriers
of passengers upon public streets, roads and highways,
providing for the issuance of permits; prescribing
penalties for violations, and providing when this act
shall take effect."

The trial court found the following facts:   That ap-
pellants are engaged in what is known as the automo-
bile rent business; that each of them is the owner of
an automobile which he drives for hire, either at a
charge of so much per trip or so much per hour; that

[1]Reported in 172 Pac. 229.

each of them has a fixed stand where, when not engaged with customers or not otherwise using the car, they are available to prospective customers during many hours of the day and night; that none of them has a fixed route or routes over which they operate their motor cars; that they do not, when engaged by one person for a trip or trips, ever carry any passenger or passengers other than those directed by the original hirer, whether their automobile capacity is exhausted or not; that none of them has or maintains any fixed schedule of rates for the transportation of passengers, either for a single trip or by the hour, and that each of them "do now and have always reserved the right to transport passengers or refuse to transport them whether they are occupied or not occupied with other engagements." Upon these facts the trial court concluded that the business conducted by the several appellants falls within the provisions of the act and is subject to its regulations. A decree was entered accordingly, from which this appeal is prosecuted.

Appellants insist that, under the facts found by the court, they are not common carriers of passengers, hence not within the purview of the act. For the purpose of this opinion, it will be assumed that the statute applies only to common carriers of passengers in motor propelled vehicles. *State v. Ferry Line Auto Bus Company,* 93 Wash. 614, 161 Pac. 467. The sole inquiry, therefore, is whether, under the facts set forth, appellants are such carriers. The precise question thus presented is of first impression in this court, and its importance seems to justify an extended discussion of the authorities.

Carriers may be defined as persons or corporations who undertake to transport or convey goods, property

or persons, from one place to another, gratuitously or for hire; and are classified as private or special carriers, and common or public carriers; the class to which a particular carrier is to be assigned, depending upon the nature of his business, the character in which he holds himself out to the public, the terms of his contract, and his relations generally to the parties with whom he deals and the public. 1 Moore, Carriers (2d ed.), §§ 1 and 2. The books abound with definitions of both common and private carriers from which the distinguishing features may be gathered. Judge Thompson submits the following:

"A common carrier of passengers is one who undertakes for hire, to carry all persons indifferently who may apply for passage. To constitute one a common carrier, it is necessary that he should hold himself out as such. This may be done not only by advertising, but by actually engaging in the business and pursuing the occupation as an employment." Thompson, Carriers of Passengers, p. 26, note 1.

Redfield in his treatise says:

"It is generally considered that, where the carrier undertakes to carry only for the particular occasion, *pro hac vice*, as it is called, he cannot be held responsible as a common carrier. So, also, if the carrier be employed in carrying for one or a definite number of persons, by way of special undertaking, he is only a private carrier. To constitute one a common carrier he must make that a regular and constant business, or at all events, he must, for the time hold himself ready to carry for all persons, indifferently, who choose to employ him." Redfield, Carriers and Bailees, § 19.

In Dobie on Bailments and Carriers, at §§ 106 and 107 the author says:

"The private carrier is one who, without engaging in such business as a public employment, undertakes by special contract to transport goods in particular instances from one place to another.

"The common carrier of goods is one who holds himself out, in the exercise of a public calling, to carry goods, for hire, for whomsoever may employ him."

This author at § 164 states:

"The same considerations that distinguish the common from the private carrier of goods apply to set apart the common and private carrier of passengers."

Hutchinson announces the rule in this language:

"Private carriers for hire are such as make no public profession that they will carry for all who apply, but who occasionally or upon the particular occasion undertake for compensation to carry the goods of others upon such terms as may be agreed upon. They are not common carriers because they do not make the carriage of goods for others a business, and do not hold themselves out to the public as ready and willing to carry indifferently for all persons any particular class of goods or goods of any kind whatever." 1 Hutchinson, Carriers (3d ed.), § 35.

Judge Story observes:

"To bring a person under the description of a common carrier, he must exercise it as a public employment; he must undertake to carry goods for persons generally, and he must hold himself out as ready to engage in the transportation of goods for hire, as a business, not as a casual occupation *pro hac vice*. A common carrier has therefore been defined to be one who undertakes for hire or reward to transport the goods of such as choose to employ him, from place to place." Story, Bailments, § 495.

Chancellor Kent says:

"Common carriers undertake generally, and not as a casual occupation, and for all people indifferently, to convey goods, and deliver them at a place appointed, for hire as a business, and with or without a special agreement as to price." 2 Kent, Commentaries, 598.

In vol. 1, Michie on Carriers, at page 3, it is said:

"A common carrier of passengers is one who undertakes, for hire, to carry all persons indifferently who may apply for passage."

In vol. 1, Moore on Carriers, at § 4, the author says:

"A private carrier is one who agrees, by special agreement or contract, to transport persons or property from one place to another, either gratuitously or for hire; one who undertakes for the transportation in a particular instance only, not making it a vocation, nor holding himself out to the public ready to act for all who desire his services. Common carriers, however, hold themselves out to carry for all persons indiscriminately."

In vol. 10, Corpus Juris, at § 1, we find:

"A carrier is one that undertakes the transportation of persons or movable property, and the authorities, both elementary and judicial, recognize two kinds or classes of carriers, namely, private carriers and common carriers. A private carrier is one who, without being engaged in such business as a public employment, undertakes to deliver goods in a particular case for hire or reward. While a common carrier has been defined as one that holds itself out to the public to carry persons or freight for hire."

Passing from the definitions given by the text writers to a few of the pertinent cases, we find the following in which the distinguishing features are applied.

In *McHenry v. Philadelphia, W. & B. R. Co.*, 4 Har. (Del.) 448, it was held that the owners of stage wagons, stage coaches, and railroad cars, who carry goods as well as passengers for hire; wagoners, teamsters and cart men who undertake as a common employment to carry goods for hire, from one town to another; the masters and owners of ships, vessels, steamboats, barge owners, canal boatmen and ferrymen, em-

ployed in the like business, are all common carriers: the test applied being,

"A common carrier is one who undertakes and exercises, as a public employment, the transportation or carriage of goods for persons generally, from place to place, whether by land or by water, and to deliver them at the place appointed, for hire or reward, and with or without a special agreement as to price."

In *Fish v. Chapman,* 2 Ga. 349, 46 Am. Dec. 393, it was held that:

"To render one a common carrier his undertaking must be general and for all people indifferently. The undertaking may be evidenced by the carrier's own notice or practically by a series of acts, by his known habitual continuance in this line of business. He must assume to be the servant of the public, he must undertake for all people. A special undertaking for one man does not render a person a common carrier. One who follows carrying for a livelihood or who gives out to the world in any intelligible way that he will take goods or other things for transportation from place to place, whether for a year, a season, or less time, is a common carrier and subject to all the liabilities of such."

In *Varble v. Bigley,* 14 Bush (Ky.) 698, 29 Am. Rep. 435, it is said:

"When a person has assumed the character of a common carrier, either by expressly offering his services to all who will hire him, or by so conducting his business as to justify the belief on the part of the public that he means to become the servant of the public, and to carry for all, he may be safely presumed to have intended to assume the liabilities of a common carrier, for he was bound to know that the law would so charge him, and knowing, must have intended it."

In *Parmelee v. Lowitz,* 74 Ill. 116, 24 Am. Rep. 276, the proprietor of a line of omnibuses and baggage wagons, engaged in carrying for hire, passengers and baggage for all persons choosing to hire, from, to and

between depots, hotels and different parts of the city of Chicago, was held to be a common carrier. The doctrine of this case is expressly reaffirmed in the recent case of *Hinchliffe v. Wenig Teaming Co.*, 274 Ill. 417, 113 N. E. 707.

In *McGregor v. Gill*, 114 Tenn. 521, 86 S. W. 318, 108 Am. St. 919, where it was held that a livery stable keeper who had hired a team and conveyance to a customer for a special occasion, was not a common carrier, the distinction between the two classes is aptly stated in this language:

"The present case bears no likeness to that of *Lawrence v. Hudson*, 12 Heisk [Tenn.] 671, relied on as authority by the plaintiff in error. In that case the defendant was the owner of a line of omnibuses running from Nashville to Edgefield, holding himself out to the public as ready and willing to carry for hire all persons who offered themselves as passengers. This owner was, upon all the authorities a common carrier, and was properly held to the full limit imposed upon one so engaged."

In that case the court approved this definition of a common carrier:

"A common carrier of passengers is one who undertakes for hire to carry all persons indifferently who may apply for passage. To constitute one a common carrier it is necessary that he should hold himself out to the community as such."

In *Robertson & Co. v. Kennedy*, 2 Dana (Ky.) 430, 26 Am. Dec. 466, the court of appeals of Kentucky had before it this state of facts: The defendant had been in the habit of hauling for hire, in the town of Brandenburgh, for every one who applied to him, with an ox team, driven by his slave; he undertook to haul for plaintiffs a hogshead of sugar, and in the course of transporting it, the slide slipped into the river, whereby the sugar was spoiled. In an action to recover

against the defendant upon the theory that he was a common carrier, the court held:

."Every one who pursues the business of transporting goods for hire, for the public generally, is a common carrier. According to the most approved definition, a common carrier is one who undertakes, for hire or reward, to transport the goods of all such as choose to employ him, from place to place. Draymen, cartmen and porters, who undertake to carry goods for hire, as a common employment, from one part of a town to another, come within the definition. So also does the driver of a slide with an ox team. The mode of transporting is immaterial."

The case of *Lloyd v. Haugh*, 223 Pa. St. 148, 72 Atl. 516, 21 L. R. A. (N. S.) 188, is peculiarly applicable here, for the reason that its facts are strikingly similar to those found by the trial court. From the opinion it appears:

"The defendant, an incorporated company, though chartered to do a general warehouse and storage business, does not confine itself strictly to the particular business for which it was chartered, but engages as well in the business of moving household goods in the city of Pittsburg and vicinity. The president of the company, speaking to this point, says in his testimony that general hauling of household goods is one of the particular lines of business in which the company engages, and that it solicits of this kind by public advertisements in various ways, by signs upon its wagons, upon fences, when that is allowed, by cards intended for general distribution, and by the bills and tags used in the course of the business. These advertisements speak for themselves, and unquestionably establish the fact, independent of everything else in the case, that the defendant does hold itself out to the public as engaged in the moving of household goods, thereby inviting employment along this line. None of these advertisements contain a suggestion of limited liability, or that the company will render such service only as it may select its patrons. Notwithstanding this public

committal of the company to a general and indiscriminating service, it is argued that inasmuch as the company claims the right to select those whom it will serve, and because its custom has been and is to discriminate, accepting some and rejecting others, as it may choose, this circumstance makes it a private as distinguished from a common carrier, and exempts it from the obligations and liability which the law imposes on the latter relation. . . . Conceding, however, that such a duty (to carry indiscriminately at established prices) rests upon a common carrier, to claim that one is not a common carrier because he has persistently disregarded this duty and has arbitrarily chosen whom he would serve, notwithstanding he has invited the public generally to apply, is to make a public duty determinable by the pleasure of the individual and not by principle or law. We express a doctrine universally sanctioned when we say, that anyone who holds himself out to the public as ready to undertake for hire or reward the transportation of goods from place to place, and so invites custom of the public, is in the estimation of the law a common carrier. . . . We are dealing with a case where the carrier made the transportation of household goods part of its regular business, advertised that business in a way to solicit custom from the general public. An unavoidable implication arises that it holds itself in readiness to engage with anyone who might apply.''

In *Vandalia R. Co. v. Stevens,* 114 N. E. 1001, the appellate court of Indiana observed:

''On the other hand, we cannot agree with the appellant's contention that the common carrier may, by the words of its contract, convert itself into a private carrier, where the transportation undertaken and the duties and responsibilities incident thereto are such as are ordinarily incident to a common carrier.''

In *Bank of Kentucky v. Adams Express Co.,* 93 U. S. 174, Mr. Justice Strong said:

''We have already remarked, the defendants were common carriers. They were not the less such because

they had stipulated for a more restricted liability than would have been theirs had their receipt contained only a contract to carry and deliver. What they were is to be determined by the nature of their business, not by the contract they made respecting the liabilities which should attend it. Having taken up the occupation, its fixed legal character could not be thrown off by any declaration or stipulation that they should not be considered such carriers.''

In vol. 1, Michie on Carriers, at page 3, the author says:

''Persons carrying on a transportation business under circumstances which, in law, constitute them common carriers, cannot divest themselves of that character, nor secure an exemption from its liabilities, by declaring in their bills of lading, etc., that they are not to be deemed common carriers. What they are is to be determined by the nature of their business.''

Authorities to the same effect may be cited indefinitely; but from the foregoing it is manifest that a common carrier is one whose occupation is the transportation of persons or things from place to place for hire or reward, and who holds himself out to the world as ready and willing to serve the public indifferently in the particular line or department in which he is engaged; the true test being whether the given undertaking is a part of the business engaged in by the carrier which he has held out to the general public as his occupation, rather than the quantity or extent of the business actually transacted, or the number and character of the conveyances used in the employment. On the other hand, if the undertaking be a single transaction, not a part of the general business or occupation engaged in, as advertised and held out to the general public, then the individual or company furnishing such service is a private and not a common carrier. In either case the question must be determined by the

character of the business actually carried on by the carrier and not by any secret intention or mental reservation it may entertain or assert when charged with the duties and obligations which the law imposes.

An analysis of the findings of the lower court discloses that appellants' calling is characterized by the following features: (a) they are engaged in what is known as the automobile rent business; (b) each of them owns and operates a motor propelled vehicle for hire, either at a charge of so much a trip or so much per hour; (c) each has a fixed stand or place where his car is available to prospective customers during many hours of the day and night; and (d) they transport passengers from place to place. Here we have carriers engaged in transporting persons for hire as a business or occupation, and impliedly and practically holding themselves out to the public as ready and willing to serve indiscriminately all who may desire the use of their facilities. The fact that they have no fixed schedule of charges, do not operate over definite routes, do not upon all occasions load the car to its full capacity, and *reserve* the right to refuse to transport passengers whether their automobile is engaged or not, is wholly immaterial; their character is determined by their public profession, not by undisclosed reservations or secret intentions.

The advent of the automobile as a mode of conveyance has in nowise marked a departure from or modification of the principles of the law of carriers as theretofore defined and applied by the courts. The automobile is but a modern method of transportation to which the settled rules have been extended. Babbitt, in his work, The Law Applied to Motor Vehicles, at § 620, observes:

"The motor vehicle is daily coming into increasing use in a commercial capacity. It is already found in

nearly every line of business. Associations and corporations have been organized with the motor car as a means of transporting both passengers and property as common carriers. . . . The distinction between such carriers and private carriers is that the former holds himself out to all persons who choose to employ him, as ready to carry for hire, while the latter agrees in some special case with some private individual to carry for hire. The common carrier's employment is public, and he is bound to carry the goods and persons of all who demand carriage and who comply with his reasonable terms. . . . The essence of the distinction between the two classes of carriers is that in order to constitute one a *common carrier,* it is necessary that he hold himself out to the public as such. . . . And one may hold himself out as a common carrier not only by advertising, but by actually engaging in the business and pursuing the occupation as an employment."

Huddy on Automobiles (4th ed.), § 39, says:

"An automobile may be used as a common carrier, a private carrier, or a personal private conveyance. Public motor vehicles, such as sight-seeing cars, taxicabs, and others which are employed in carrying all persons applying for transportation, come within the definition that a common carrier of passengers is one who undertakes for hire to carry all persons who may apply for passage. But to constitute one a common carrier it is necessary that he should hold himself out as one."

A person or company engaged in the operation of a jitney bus is a common carrier. *Dresser v. Wichita,* 96 Kan. 820, 153 Pac. 1194, Ann. Cas. 1917C 1045, L. R. A. 1916B 1143; *Memphis v. State ex rel. Ryals,* 133 Tenn. 83, 179 S. W. 631, L. R. A. 1916D 246; Berry, Automobiles (2d ed.), § 874; Huddy, Automobiles (4th ed.), § 372.

A taxicab company, following the business of transporting persons for hire and holding itself out as ready

to carry one and all indiscriminately, is a common carrier and subject to all the responsibilities of such a carrier. *Public Service Commission v. Hurtgan,* 91 Misc. Rep. 432, 154 N. Y. Supp. 897; *Donnelly v. Philadelphia & Reading R. Co.,* 53 Pa. Sup. Ct. 78; *Van Hoeffen v. Columbia Taxicab Co.,* 179 Mo. App. 591, 162 S. W. 694; *Carlton v. Boudar,* 118 Va. 521, 88 S. E. 174; *State v. Seattle Taxicab & Transfer Co.,* 90 Wash. 416, 156 Pac. 837; Berry, Automobiles (2d ed.), § 887; Huddy, Automobiles (4th ed.), § 303; Babbitt, Motor Vehicles, § 621.

There is no essential difference in the character of service furnished by the taxicab and that supplied by appellants. They afford similar accommodations, are operated in practically the same manner, and are necessarily governed by the same principles. We conclude that appellants come within the act in question and are subject to its provisions. The judgment is affirmed.

ELLIS, C. J., MOUNT, HOLCOMB, and CHADWICK, JJ., concur.