[No. 26221.   Department Two.   December 30, 1936.]

IKE ELKINS *et al., Respondents,* v. FERD SCHAAF, *as Director of the Department of Public Service, et al., Appellants.*[1]

[1]Reported in 63 P. (2d) 421.

The Attorney General, Don Cary Smith, Assistant, Frederick J. Lordan, and Will M. Derig, for appellants.

Roy C. Fox and Gray & McNaughton, for respondents.

MILLARD, C. J.—Ike Elkins and J. E. Elkins are engaged in the business of logging contractors. On December 14, 1929, they entered into a contract with the Panhandle Lumber Company under the terms of which they were obligated to cut, limb, end stamp, skid and deliver afloat in the Pend Oreille river the timber on certain lands belonging to the lumber company. W. W. Saults entered into a similar contract on August 1, 1935, for the logging of certain other timber belonging to the Panhandle Lumber Company. The contracts were for a stated price for the whole operation.

Ike Elkins, J. E. Elkins and W. W. Saults are engaged exclusively in the carrying on of the contracts and, among other necessary equipment used exclusively in the business, own and use four trucks with trailers and one truck without trailer.

In order to carry on the business after felling, limbing, stamping and loading the logs and timber, it is necessary, in order to deliver the same, to truck them to one of two landings which are suitable for the landing of logs afloat into the Pend Oreille river. These two points are the only suitable points for delivery of the logs from the lands covered by the contract into the Pend Oreille river.

One of these landings is immediately in the flowing waters of the river and can be used only while the river is high enough to float the logs. This period is

from May 1st to October 10th. The other landing is in a slough where the logs or poles are decked during the winter to be floated down the river in the spring when the water is high. The river is too low for driving logs after October 10th; that is to say, immediately opposite the land being logged is a landing for the logs delivered during approximately six months of the year, when the river is low. The other landing is down the river three or four miles below the first landing and is suitable when the flow of the river is high. To arrive at one of the landings, it is necessary to cross the highway. To reach the other landing, it is necessary to cross a highway and follow it for a distance of approximately four miles in approaching the landing.

Deeming the provisions of chapter 184 of the Laws of 1935, p. 883 (Rem. Rev. Stat. (Sup.), § 6382-1 *et seq.*), applicable to the operations of the logging contractors, the department of public service demanded that the contractors procure permits, file liability and property damage insurance with the department, and otherwise comply with the provisions of chapter 184 as interpreted by the department.

The logging contractors instituted an action to permanently restrain the defendants from interference with the contractors' transportation of timber products under their contracts with the Panhandle Lumber Company. Trial of the cause resulted in findings of fact and conclusions of law in favor of the plaintiffs. In consonance therewith, a judgment and decree was entered permanently enjoining the defendants from interfering with the operations of the plaintiffs under their contracts. The defendants have appealed.

Determinative of this appeal is the answer to

the question whether the provisions of chapter 184 of the Laws of 1935, p. 883, are applicable to the operations of respondents. It patently appears from the examination of chapter 184 that the legislature did not intend the act to apply to the class of business conducted by the respondents. The act provides:

"Sec. 5. No 'common carrier,' 'contract carrier,' or 'special carrier' shall hereafter operate for the transportation of property for compensation in this state without first obtaining from the department a permit so to do under the provisions of this act. A permit shall be issued to any qualified applicant therefor without hearing, or after hearing if the department deems such hearing necessary in the public interest, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing and able to perform the service proposed and to conform to the provisions of this act and the requirements, rules and regulations of the department hereunder, and that the proposed service to the extent authorized will not be contrary to the declared policy of this act.

"No permit shall be granted if the department finds that the applicant is not financially able, properly and adequately equipped and capable of conducting the transportation service applied for in compliance with the law and rules and regulations of the department, or if the applicant or any of its principal officers or stockholders fail to comply with the laws of the State of Washington or with the laws of the United States regulating motor transportation.

"Nothing contained in this act shall be construed to confer upon any person the exclusive right or privilege of transporting property for compensation over the public highways of the State of Washington. No certificate of public convenience and necessity shall be required and existing certificates of public convenience and necessity for the transportation of property for compensation are hereby abolished." Laws 1935, p. 886, § 5 (Rem. Rev. Stat. (Sup.), § 6382-5).

The act defines the carriers included as follows:

"Sec. 2. . . .

"(e) The term 'common carrier' means any person who undertakes to transport property for the general public by motor vehicle for compensation, whether over regular or irregular routes, or regular or irregular schedules, including motor vehicle operations of carriers by rail or water and of express or forwarding companies.

"(f) The term 'contract carrier' means any person, not included under paragraph 'e' of this section, who under special and individual contracts or agreements transports property by motor vehicle for compensation.

"(g) The term 'special carrier' means any person engaged exclusively in the transportation of logs, piling, poles, pulpwood, coal, minerals, sand, gravel, rock and other building materials in vehicles especially constructed and equipped for handling such commodities and operating for compensation.

"(h) The term 'private carrier' means any person engaged in the transportation in his own vehicle of property owned, sold or to be sold by him in the furtherance of any private commercial enterprise or for the purpose of lease, rent or bailment." Laws 1935, p. 884, § 2 (Rem. Rev. Stat. (Sup.), § 6382-2).

It is clear that the respondents do not come within any of the foregoing definitions, from which it logically follows that the law in question is not applicable to them.

Appellants concede that respondents are not common carriers as defined by chapter 184 of the Laws of 1935. It is the position of appellants, however, that respondents are either special carriers or contract carriers.

None of the respondents has undertaken to transport property for the general public by motor vehicle for compensation either over regular or irregular routes, or on regular or irregular schedules. None of

the respondents is under special or individual contract or agreement to transport property by motor vehicle for compensation. None of the respondents is a person engaged exclusively or at all in the transportation of logs, piling, poles, pulpwood, coal, minerals, sand, gravel, rock and other building materials in vehicles especially constructed and equipped for handling such commodities, and operating for compensation. None of the respondents is engaged in the transportation in his own vehicle of property owned, sold or to be sold by him in the furtherance of any private commercial enterprise or for the purpose of lease, rent or bailment.

The trial court correctly found that none of the respondents is engaged in carrying on any business on the public highways of the state of Washington. The only use the respondents desire to make of the highways is in connection with their business of logging contractors and in carrying out the terms of their contracts with the Panhandle Lumber Company. The use of the highways by the respondents is incidental only to their business as logging contractors.

To state the facts is to declare the law. In the statutory definition of "special carrier" and the definition by the statute of "contract carrier," chapter 184 of the Laws of 1935 limited the application of the act to those persons who, under special and individual contracts or agreements, transport property by motor vehicle for compensation. Further buttressing the position of the trial court is subd. (g), § 2 of chapter 184, p. 884, respecting special carriers, quoted above, which section of the statute is applicable to the hauling of logs, etc., and manifestly shows no intent by the legislature to include operations such as those in which the respondents are engaged.

48

We agree with the following argument of counsel for the respondents:

"On the contrary, by the terms 'operating for compensation' or 'for compensation' the legislature meant compensation pursuant to contract or agreement for the trucking, the regulation of such compensation being one of the chief purposes of the Act. In this case, respondents were doing their own trucking. Their use of the road was an ordinary use incidental to carrying on their business as loggers and not a special business use."

The judgment is affirmed.

HOLCOMB, TOLMAN, BEALS, and MITCHELL, JJ., concur.

