[No. 27661. *En Banc*. May 2, 1940.]

IKE ELKINS *et al., Appellants,* v. FERD SCHAAF, *as Director of the Department of Public Service, et al., Respondents.*[1]

[1]Reported in 102 P. (2d) 230.

*Roy C. Fox* (*Gray & McNaughton,* of counsel), for appellants.

*The Attorney General* and *Don Cary Smith, Assistant* (*Will M. Derig,* of counsel), for respondents.

*Frederick J. Lordan, amicus curiae.*

MILLARD, J.—On December 14, 1929, Ike Elkins and J. E. Elkins, who are engaged in the business of logging contractors, entered into a contract with the Panhandle Lumber Company, under the terms of which they were obligated to cut, limb, end stamp, skid, and deliver afloat in the Pend Oreille river the timber on certain lands belonging to the lumber company. In the summer of 1935, W. W. Saults entered into a similar contract for the logging of certain other timber belonging to the Panhandle Lumber Company. The contracts were for a stated price for the whole operation, which, as stated above, included delivery of the logs at certain designated points.

The three parties named are engaged exclusively in the carrying on of the contracts and, among other necessary equipment, used exclusively in the business, own and use a number of trucks with trailers.

In order to carry on the business after felling, limbing, stamping, and loading the logs, it is necessary, in order to deliver the same, to transport them by truck to one of two landings which are suitable for the delivery of logs afloat into the Pend Oreille river. These two points are the only suitable points for delivery of the logs from the lands covered by the contract into the river. From May 1st to October 10th, when the

14

flow of the river is high, the logs are delivered afloat directly into the river, and during these operations it is necessary for the logging contractors to only cross over a secondary highway. From October 10th to May 1st, when the waters of the river are low, it is necessary to deck the logs in a slough adjacent to the river, where they can be carried away when the high water period arrives. During this period of operation, it is necessary for the logging contractors to travel on one of the public highways a distance of approximately four and one-half miles.

The department of public service, deeming the provisions of chapter 184, of the Laws of 1935, p. 883, applicable to the operations of the logging contractors, demanded that the contractors procure permits, file liability and property damage insurance with the department, and otherwise comply with the provisions of chapter 184 as interpreted by the department. The logging contractors brought an action to permanently restrain the department from interfering with the contractors' transportation of timber products under their contracts with the Panhandle Lumber Company. As a result of the trial of that cause, a decree was entered permanently enjoining the department from interfering with the operations of the contractors under their contracts.. On appeal of the department, we held that the logging contractors did not come within any of the statutory (chapter 184, Laws of 1935) definitions of carriers, hence the statute (chapter 184, Laws of 1935) was not applicable to them. *Elkins v. Schaaf,* 189 Wash. 42, 63 P. (2d) 421.

The legislature had the power, and, pursuant thereto, explicitly declared, by chapter 166, Laws of 1937, p. 627, § 5 (Rem. Rev. Stat., Vol. 7A, § 6382-4a [P. C. § 234-13½dd]), which amended chapter 184, Laws of 1935, by the addition of § 4-a to chapter 184, its inten-

tion to include logging contractors who are engaged, like the contractors in the case at bar, for compensation to perform a combination of services which includes transportation of property of others upon the public highways within the class required to obtain a carrier's permit.

The department of public service demanded, under the provisions of chapter 166, Laws of 1937, that the logging contractors procure permits, file liability and property damage insurance with the department, etc. The logging contractors instituted an action to permanently restrain the department from interference with the contractors' transportation of timber products under their contracts with the Panhandle Lumber Company. The sufficiency of the complaint—the allegations of which are not materially different, except as to the amendment of chapter 184, Laws of 1935, by chapter 166, Laws of 1937, than the facts in *Elkins v. Schaaf,* 189 Wash. 42, 63 P. (2d) 421—to constitute a cause of action was challenged by demurrer, which was sustained. The appeal is from the judgment of dismissal rendered upon the plaintiffs' refusal to plead further.

Section 2, subd. (e), chapter 184, Laws of 1935, p. 884, defines a common carrier as:

" . . . any person who undertakes to transport property for the general public by motor vehicle for compensation, whether over regular or irregular routes, or regular or irregular schedules, including motor vehicle operations of carriers by rail or water and of express or forwarding companies."

That subdivision of § 2 was not amended by chapter 166, Laws of 1937. A contract carrier is defined by § 2, subd. (f), chapter 184, Laws of 1935, as any person not included within the definition of "common carrier" who, "under special and individual contracts or agree-

ments transports property by motor vehicle for compensation."

The definition of "contract carrier" under § 2, chapter 166, Laws of 1937, p. 624 (Rem. Rev. Stat., Vol. 7A, § 6382-2 [P. C. § 234-13½b]), is the same as the definition in chapter 184, Laws of 1935, except contract carriers are not included within the definition of "common carrier" and "private carrier."

Section 5, chapter 184, Laws of 1935, p. 886, provides:

"Sec. 5. No 'common carrier,' 'contract carrier,' or 'special carrier' shall hereafter operate for the transportation of property for compensation in this state without first obtaining from the department a permit so to do under the provisions of this act. A permit shall be issued to any qualified applicant therefor without hearing, or after hearing if the department deems such hearing necessary in the public interest, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing and able to perform the service proposed and to conform to the provisions of this act and the requirements, rules and regulations of the department hereunder, and that the proposed service to the extent authorized will not be contrary to the declared policy of this act.

"No permit shall be granted if the department finds that the applicant is not financially able, properly and adequately equipped and capable of conducting the transportation service applied for in compliance with the law and rules and regulations of the department, or if the applicant or any of its principal officers or stockholders fail to comply with the laws of the State of Washington or with the laws of the United States regulating motor transportation.

"Nothing contained in this act shall be construed to confer upon any person the exclusive right or privilege of transporting property for compensation over the public highways of the State of Washington. No certificate of public convenience and necessity shall be required and existing certificates of public convenience

and necessity for the transportation of property for compensation are hereby abolished."

Chapter 166, Laws of 1937, added a new section, which reads as follows:

"Section 4-a. Every person who engages for compensation to perform a combination of services which includes transportation of property of others upon the public highways shall be subject to the jurisdiction of the department as to such transportation and shall not engage upon the same without first having obtained a common carrier or contract carrier permit to do so. Every person engaging in such a combination of services shall advise the department what portion of the consideration is intended to cover the transportation service and if the agreement covering the combination of services is in writing, the rate and charge for such transportation shall be set forth therein. The rates or charges for the transportation services included in such combination of services shall be subject to control and regulation by the department in the same manner that the rates of common and contract carriers are now controlled and regulated." Laws of 1937, chapter 166, p. 627, § 5 (Rem. Rev. Stat., Vol. 7A, § 6382-4a [P. C. § 234-13½dd]).

It is manifest that the legislature intended by its amendment of the 1935 statute to make logging contractors, like appellants, subject to the jurisdiction of the department as to transportation upon public highways. The legislature could not, by the use of other language, have more clearly expressed its intention. The purpose of the amendatory statute is so patent that interpretation is unnecessary, and attempted construction tends to confuse rather than clarify. To vindicate the obvious, is often as difficult as to elucidate the obscure.

In chapter 166, Laws of 1937, the phrase "contract carrier" includes all motor vehicle operators who are not common carriers and who are not private car-

riers. A private carrier, under the 1937 statute, is a person who, in his own vehicle, transports only property owned, or being bought or sold by him in good faith, and only when such transportation is purely incidental to some other established private business owned or operated by him in good faith. Of course, the appellants are not private carriers. They do not transport property which is being bought or sold by them. They transport the property of others. They are not within the definition of a private carrier, but they are within the definition of a contract carrier.

Appellants' position that the 1935 statute defining common carriers and contract carriers was not changed in any material respect by the 1937 statute, is not sound. Section 4-a added to chapter 184, Laws of 1935, by chapter 166, Laws of 1937, plainly provides that every person who engages for compensation to perform a combination of services which includes transportation of property of others upon the public highways shall be subject to the jurisdiction of the department as to such transportation, and shall not engage upon the same without first having obtained a common carrier or contract carrier permit to do so. Those carriers are required to inform the department what portion of the consideration they receive for performance of a combination of services is intended to cover the transportation service, and if the agreement covering the combination of services is in writing, the rate and charge for such transportation services shall be set forth therein. The rates or charges for the transportation services included in such combination of services are subject to control and regulation by the department in the same manner that the rates of common and contract carriers are regulated by the department.

Appellants transport property of others by motor vehicle for compensation under special and individual

contracts for a combination of services which includes transportation. Our holding in *Elkins v. Schaaf*, 189 Wash. 42, 63 P. (2d) 421, that the appellants' use of highways was only incidental to their business of logging contractors, hence those contractors were not within any of the definitions of "carriers," as by the terms "operating for compensation" the legislature meant compensation pursuant to contract for the trucking, and the contractors were doing their own trucking, therefore their use of the road was not a special business use, is not controlling, in view of the amendment of chapter 184, Laws of 1935, by addition thereto of § 4-a by chapter 166, Laws of 1937.

Under chapter 184, Laws of 1935, *Elkins v. Schaaf*, *supra*, is clearly correct. Under chapter 166, Laws of 1937, however, the legislature declared that, where a portion of a combination of services in which a person engaged for compensation included transportation of property of another upon the public highways, such services constituted a business upon public highways and, therefore, subject to regulation.

A portion of the business of appellants as logging contractors—felling, etc.—is not a business affected by a public interest and is not conducted over the public highways; however, another portion of their business— transportation of the logs on motor trucks over the public highways—is both a business affected with a public interest and is carried on over the public highways. It comes within the definition of a contract carrier. *Prater v. Department of Public Service*, 187 Wash. 335, 60 P. (2d) 238.

Nor do we agree with appellants that, if we construe chapter 184, Laws of 1935, as amended by chapter 166, Laws of 1937, to apply to appellants, that the statute is violative of the fourteenth amendment of the Federal constitution as depriving them of prop-

erty without due process because their business is not affected with a public interest.

We held in *Prater v. Department of Public Service,* 187 Wash. 335, 60 P. (2d) 238, that the business of transporting freight over the public highways for gain is a business affected with a public interest. Concededly, a portion of the compensation for the combined services of appellants to the Panhandle Lumber Company is received for transportation of logs of others (Panhandle Lumber Company) over the highways of this state. That is sufficient to establish a public interest.

There is no denial to appellants of equal protection of the law because they, as contractors, are subject to the regulatory act while the owner of the timber, if it does its own hauling, is not subject to the act. A portion of the combined services of appellants under its contract is for use of the highways for gain; therefore, the state may regulate that use. *Prater v. Department of Public Service, supra.*

The equal protection clause of the fourteenth amendment of the Federal constitution does not deprive the state of the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. A classification which has some reasonable basis does not offend against the equal protection clause of the fourteenth amendment merely because it results in some inequality. When the classification in such a law is challenged, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. The burden is upon the one who assails the classification in such a law of showing that it does not rest upon any reasonable

basis but is essentially arbitrary. *Lindsley v. Natural Carbonic Gas Co.*, 220 U. S. 61, 55 L. Ed. 369, 31 S. Ct. 337, Ann. Cas. 1912C, 160. We must assume the power and the right of the state to regulate the use of its highways, from which it follows that such right cannot be restricted within narrow bounds.

"On the contrary, to the end that such right might be fully enjoyed and exercised, there is a constant recognition of the principle that the state 'has a broad discretion in classification in the exercise of its power of regulation.' *Smith v. Cahoon*, 283 U. S. 553, loc. cit. 566, 51 S. Ct. 582, 587, 75 L. Ed. 1264. Upon such classification, no person can interpose an objection, save only in those cases where the classification or discrimination is entirely arbitrary." *Schwartzman Service v. Stahl*, 60 F. (2d) 1034.

In making its classification, the legislature is entitled to consider the frequency and the extent to which the operations will use the highway.

"But the legislature in making its classifications was entitled to consider frequency and character of use and to adapt its regulations to the classes of operations, which by reason of their extensive as well as constant use of the highways brought about the conditions making the regulations necessary. *Continental Baking Co. v. Woodring* [286 U. S. 352], *supra*. It is said that the exception was designed to favor transportation by railroad as against transportation by motor trucks. If this was the motive of the legislature, it does not follow that the classification as made in this case would be invalid. The State has a vital interest in the appropriate utilization of the railroads which serve its people, as well as in the proper maintenance of its highways as safe and convenient facilities." *Sproles v. Binford*, 286 U. S. 374, 76 L. Ed. 1167, 52 S. Ct. 581.

In *Continental Baking Co. v. Woodring*, 286 U. S. 352, 76 L. Ed. 1155, 52 S. Ct. 595, 81 A. L. R. 1402, it was held that the legislature may also consider the character of the use to which the highway is subjected

by the user, and the supreme court of the United States quoted with approval the language of the district court referring to the basis for the distinction which was made by reason of the character of the use of the highway:

"The third exemption applies to 'the transportation of livestock and farm products to market by the owner thereof or supplies for his own use in his own motor vehicle.' In *Smith v. Cahoon* [283 U. S. 553], *supra,* the state statute, which applied to all carriers for compensation over regular routes, including common carriers, exempted from its provisions 'any transportation company engaged exclusively in the transporting of agricultural, horticultural, dairy or other farm products and fresh and salt fish and oysters and shrimp from the point of production to the assembling or shipping point en route to primary market, or to motor vehicles used exclusively in transporting or delivering dairy products.' The stated distinction was thus established between carriers, and between private carriers, notwithstanding the fact that they were 'alike engaged in transporting property for compensation over public highways between fixed termini or over a regular route.' The Court was unable to find any justification for this discrimination between carriers in the same business, that is, between those who carried for hire farm products, or milk or butter, or fish or oysters, and those who carried for hire bread or sugar, or tea or coffee, or groceries in general, or other useful commodities.

"The distinction in the instant case is of a different sort. The statute does not attempt to impose an arbitrary discrimination between carriers who transport property for hire, or compensation, with respect to the class of products they carry. The exemption runs only to one who is carrying his own livestock and farm products to market or supplies for his own use in his own motor vehicle. In sustaining the exemption, the District Court referred to the factual basis for the distinction. 'The legislature knew,' said the court 'that as a matter of fact farm products are transported to town

by the farmer, or by a non-exempt "contract carrier" employed by him. The legislature knew that as a matter of fact the use of the highways for the transportation of farm products by the owner is casual and infrequent and incidental; farmers use the highways to transport their products to market ordinarily but a few times a year. The legislature rightly concluded that the use of the highways for carrying home his groceries in his own automobile is adequately compensated by the general tax imposed on all motor vehicles.' 55 F. (2d) at p. 352. And the court properly excluded from consideration mere hypothetical and fanciful illustrations of possible discriminations which had no basis in the actual experience to which the statute was addressed. The court found a practical difference between the case of appellants 'who operate fleets of trucks in the conduct of their business and who use the highways daily in the delivery of their products to their customers,' and that of 'a farmer who hauls his wheat or livestock to town once or twice a year.' The legislature in making its classification was entitled to consider frequency and character of use and to adapt its regulations to the classes of operations, which by reason of their habitual and constant use of the highways brought about the conditions making regulation imperative and created the necessity for the imposition of a tax for maintenance and reconstruction. As the Court said in *Alward v. Johnson*, 282 U. S. 509, 513, 514: 'The distinction between property employed in conducting a business which requires constant and unusual use of the highways, and property not so employed, is plain enough.' See, also, *Bekins Van Lines v. Riley*, 280 U. S. 80, 82; *Carley & Hamilton v. Snook*, 281 U. S. 66, 73."

In *State ex rel. Department of Public Works v. Inland etc. Corp.*, 164 Wash. 412, 2 P. (2d) 888, we held that the exclusion of taxicabs and other motor vehicles used exclusively in moving farm products to market from the classification of "auto transportation company" within the act regulating common carriers for hire, was a reasonable classification and not violative

of constitution, Art. I, § 12, guaranteeing equal protection of the laws to all citizens. We said:

"Closely akin to the question just discussed, it is further argued on behalf of the appellant that the statutes violate Art. I, § 12, of the constitution, which guarantees equal protection to all citizens. Reliance is had on a portion of subdivision 'd,' § 1 of the act wherein, after defining the term 'auto transportation company,' it says:

" 'Provided, that the term "auto transportation company," as used in this act, shall not include corporations or persons, their lessees, trustees, receivers or trustees appointed by any court whatsoever, insofar as they own, control, operate or manage taxicabs, hotel busses, school busses, motor propelled vehicles, operated exclusively in transporting agricultural, horticultural, or dairy or other farm products from the point of production to the market, or any other carrier which does not come within the term "auto transportation company" as herein defined.' Laws of 1921, p. 338; Rem. Comp. Stat., § 6387.

"But that does not amount to a discrimination between common carriers or carriers of the same class. Those enumerated in the proviso are simply not included in the term 'auto transportation company,' as that term is used in the definition of common carriers under the act. Those that are stated or named as not included are not only those who

" '. . . own, control, operate or manage taxicabs, hotel busses, school busses, motor propelled vehicles, operated exclusively in transporting agricultural, horticultural, or dairy or other farm products from the point of production to the market,' . . .

" '. . . *any other carrier which does not come within the term "auto transportation company" as herein defined.'*

"In the last analysis, all of the language in the proviso is the equivalent of saying that all carriers who do not come within the term ' "auto transportation company" as herein defined,' are excluded. Thus, in a way, all carriers are divided into two classes; first, those who come within the term 'auto transportation

company' as defined in the act, and second, those who, by exclusion do not—the one common carriers, the others not common carriers, the latter being commonly spoken of as private carriers. The act applies to the whole of one class and not to any of the other. The classification is natural and reasonable rather than arbitrary, and therefore within the recognized discretionary power of the legislature to classify. The classification creates a difference not in degree, but in kind, and treats alike all those included in the class of common carriers, while all other carriers are treated alike by not being included."

We agree with counsel for respondents that there is a fundamental distinction between an owner hauling his own products, such as timber, over the highways of this state and a contractor who hauls the timber of others for compensation over the highways, even if such hauling is only a portion of a combination of services for which he receives compensation under his contract. The highways are built primarily for use of the general public in hauling their own goods or in transportation of themselves from place to place. When one hauls passengers or the freight of others for compensation, he makes the highways his place of business and therefore is subject to regulation under the statute. The appellants have by their contracts brought themselves within the classification of a carrier for compensation as distinguished from owners who transport their own goods or products.

The judgment is affirmed.

BLAKE, C. J., MAIN, BEALS, and JEFFERS, JJ., concur.

SIMPSON, J. (dissenting)—The complaint to which the demurrer was sustained states:

"That none of the plaintiffs are now engaged nor have they been engaged as common carriers in the State of Washington, and none of them have undertaken to transport property for the general public by

motor vehicle for compensation, either over regular routes or on regular or irregular schedules. That plaintiffs and neither of them are persons who, under special or individual contracts or agreements, transport property by motor vehicle for compensation. The plaintiffs and neither of them are persons engaged exclusively or at all in the transportation of logs, piling, poles, pulp wood, coal, minerals, sand, gravel, rock and other building materials in vehicles especially constructed and equipped for handling such commodities, and operating for compensation. That plaintiffs and neither of them are persons engaged in the transportation in their said vehicles of property owned, sold, or to be sold, by them or either of them in the furtherance of any private commercial enterprise or for the purpose of lease, rent, or bailment.

"That none of the plaintiffs are now engaged, nor have they been engaged for compensation, to perform a combination of services, which includes transportation of property of others, either as a common carrier or as a contract carrier, upon the public highways of the State of Washington, nor any combination of services, including transportation of products, for hire, over any highways of the State of Washington.

"That none of the plaintiffs are engaged in carrying on the business of common carriers or special carriers or private carriers or motor carriers or contract carriers, or rendering a combination of services, within the defined meaning of Section II of Chapter 184 of the Laws of the State of Washington of 1935, as Amended by Chapter 166 of the Laws of 1937 of the State of Washington, or any of the rules or regulations lawfully promulgated by the Department of Public Service or the Public Service Commission of the State of Washington.

"That none of the said plaintiffs are engaged in carrying on any business on the public highways of the State of Washington. That the only use that the plaintiffs desire to make of the highways is in connection with their said business of logging contractors and in carrying out the terms of said contracts herein referred to. That the said use of the said roads by the said plaintiffs

and each of them is only incidental to their said business and only a very trifling part of their said business is upon or connected with the highways of the State of Washington. . . .

"That plaintiffs and each of them allege that if they are required to comply with the demands of the defendants hereinbefore set forth, they will not be able to carry on their said contracts with any profit to them or either of them. That they will not be able to make any use whatever of their said trucks and equipment used in their logging operations. That any construction of the said Chapter 184 of the Session Laws of the State of Washington for 1935, as amended, requiring the plaintiffs to comply with the said demands, will result in the taking of plaintiffs' property without due process of law and in violation of the Fourteenth Amendment of the Constitution of the United States."

Copies of the contracts attached to and made a part of the complaint affirm the allegations to which I have just referred.

As stated in the majority opinion, the parties here involved were before this court in *Elkins v. Schaaf,* 189 Wash. 42, 63 P. (2d) 421. In that case, we had before us the identical contracts for logging with the same parties, and the same use of the highway as in the instant case. This court, in passing upon the factual situation, stated:

"None of the respondents has undertaken to transport property for the general public by motor vehicle for compensation either over regular or irregular routes, or on regular or irregular schedules. None of the respondents is under special or individual contract or agreement to transport property by motor vehicle for compensation. None of the respondents is a person engaged exclusively or at all in the transportation of logs, piling, poles, pulpwood, coal, minerals, sand, gravel, rock and other building materials in vehicles especially constructed and equipped for handling such commodities, and operating for compensation. None of the respondents is engaged in the transportation in

28

his own vehicle of property owned, sold or to be sold by him in the furtherance of any private commercial enterprise or for the purpose of lease, rent or bailment.

"The trial court correctly found that none of the respondents is engaged in carrying on any business on the public highways of the state of Washington. The only use the respondents desire to make of the highways is in connection with their business of logging contractors and in carrying out the terms of their contracts with the Panhandle Lumber Company. The use of the highways by the respondents is incidental only to their business as logging contractors.

"To state the facts is to declare the law. In the statutory definition of 'special carrier' and the definition by the statute of 'contract carrier,' chapter 184 of the Laws of 1935 limited the application of the act to those persons who, under special and individual contracts or agreements, transport property by motor vehicle for compensation. Further buttressing the position of the trial court is subd. (g), § 2 of chapter 184, p. 884, respecting special carriers, quoted above, which section of the statute is applicable to the hauling of logs, etc., and manifestly shows no intent by the legislature to include operations such as those in which the respondents are engaged.

"We agree with the following argument of counsel for the respondents:

" 'On the contrary, by the terms "operating for compensation" or "for compensation" the legislature meant compensation pursuant to contract or agreement for the trucking, the regulation of such compensation being one of the chief purposes of the Act. In this case, respondents were doing their own trucking. Their use of the road was an ordinary use incidental to carrying on their business as loggers and not a special business use.' "

The legislature could not and did not attempt to change the facts already decided. Appellants have not changed their occupation. They are now and have been loggers engaged exclusively in the business of logging and using a small part of the highway inciden-

tally in conducting their private business enterprise. They are not engaged in the business of transporting goods upon the highways of this state for the general public within the meaning of either the old or the new act. The legislature attempted only to regulate those who used the highways as a place to transact their business.

This is borne out by the contents of § 1, Laws of 1937, chapter 166, p. 623, which reads:

"The business of operating as a motor carrier of freight for compensation along the highways of this state is declared to be a business affected with a public interest. The rapid increase of motor carrier freight traffic and the fact that under the existing law many motor trucks are not effectively regulated have increased the dangers and hazards on public highways and make it imperative that more complete regulation should be employed to the end that the highways may be rendered safer for the use of the general public; that the wear of such highways may be reduced; that congestion on highways may be minimized; that the shippers of the state may be provided with a stabilized service and rate structure; that sound economic conditions in such transportation and among such carriers may be fostered in the public interest; that adequate, economical and efficient service by motor carriers, and reasonable charges therefor, without unjust discrimination, undue preferences or advantages, or unfair or destructive competitive practices may be promoted; that the common carriage of commodities by motor carrier may be preserved in the public interest; that the relations between, and transportation by and regulation of, motor carriers and other carriers may be improved and coordinated so that the highways of the State of Washington may be properly developed and preserved, and the public may be assured adequate, complete, dependable and stable transportation service in all its phases." Rem. Rev. Stat., Vol. 7A, § 6382-1 [P. C. § 234-13½a].

Section 4-a was intended to restrain only those who in fact conducted their business upon the highways and who attempted, by entering into an additional contract with others, to escape the regulations of the department by undertaking to perform other acts of business. It was not intended to bring within the provisions of the act one who was a private carrier.

Assuming that the legislative intent was to bring appellants within the act, then it must be held that the act is unconstitutional in that it seeks to subject the private carrier to regulations which are applicable only to common carriers.

Common carriers are such by reason of the business which is carried on by them.

"It is manifest that a common carrier is one whose occupation is the transportation of persons or things from place to place for hire or reward, and who holds himself out to the world as ready and willing to serve the public indifferently in the particular line or department in which he is engaged; the true test being whether the given undertaking is a part of the business engaged in by the carrier which he has held out to the general public as his occupation, rather than the quantity or extent of the business actually transacted, or the number and character of the conveyances used in the employment. On the other hand, if the undertaking be a single transaction, not a part of the general business or occupation engaged in, as advertised and held out to the general public, then the individual or company furnishing such service is a private and not a common carrier. In either case the question must be determined by the character of the business actually carried on by the carrier and not by any secret intention or mental reservation it may entertain or assert when charged with the duties and obligations which the law imposes." *Cushing v. White,* 101 Wash. 172, 172 Pac. 229.

Of like import are *State ex rel. Public Utilities Commission v. Nelson,* 65 Utah 457, 238 Pac. 237, 42 A. L. R.

849; *Gornstein v. Priver,* 64 Cal. App. 249, 221 Pac. 396; *Georgia Life Ins. Co. v. Easter,* 189 Ala. 472, 66 So. 514, L. R. A. 1915C, 456.

Appellants are private carriers engaged in a private enterprise. The contract, the pleadings, our prior decision, and the holdings of the supreme court of the United States establish that fact.

The lawmaking body of the state cannot by legislative command make of a private carrier a public carrier and by such act compel him to observe the law relative to common carriers. Mere legislative declaration that the use of a particular kind of property is affected with a public interest is not conclusive upon the question of the validity of the regulation.

"In our opinion, the question of the character of the corporation is one of fact and must be determined by the courts upon the evidence presented in the record. In the case of *Cushing v. White,* 101 Wash. 172, 172 Pac. 229, L. R. A. 1918F 463, the question of the character of the corporation was determined by the court upon the evidence, and the effect to be given to the finding of the commission was not discussed. In *Associated Pipe Line Co. v. Railroad Commission of California,* 176 Cal. 518, 169 Pac. 62, L. R. A. 1918C 849, the supreme court of California, in answering the contention that the declaration of the legislature of the character of a carrier would make it a common carrier irrespective of the facts, says:

" 'Indeed, such legislation, if attempted, would have been futile, since under the Fourteenth Amendment of the Federal constitution no state shall deprive any person of property without due process of law, and to take or devote private property to public use without compensation is such deprivation.'

"In *Producers' Transportation Co. v. Railroad Commission of California,* 251 U. S. 228, 40 Sup. Ct. Rep. 132, the supreme court of the United States said:

" 'It is, of course, true that if the pipe line was constructed solely to carry oil for particular producers under strictly private contracts and never was devoted

by its owner to public use, that is, to carrying for the public, the state could not, by mere legislative fiat or by any regulating order of a commission, convert it into a public utility or make its owner a common carrier; for that would be taking private property for public use without just compensation, which no state can do consistently with the due process of law clause of the Fourteenth Amendment.' " *State ex rel. Silver Lake R. & L. Co. v. Public Service Commission,* 117 Wash. 453, 201 Pac. 765, 203 Pac. 3.

"Moreover, it is beyond the power of the State by legislative fiat to convert property used exclusively in the business of a private carrier into a public utility, or to make the owner a public carrier, for that would be taking private property for public use without just compensation, which no State can do consistently with the due process of law clause of the Fourteenth Amendment. *Producers Transportation Co. v. Railroad Commission,* 251 U. S. 228, 230; *Wolff Co. v. Industrial Court,* 262 U. S. 522, 535." *Michigan Public Utilities Commission v. Duke,* 266 U. S. 570, 69 L. Ed. 445, 45 S. Ct. 191, 36 A. L. R. 1105.

We said in *Big Bend Auto Freight v. Ogers,* 148 Wash. 521, 269 Pac. 802:

"It is also well established that a shipper such as the Big Bend Milling Company may have its goods shipped by private contract by private carrier, and that such does not constitute a violation of our public utilities act. *State ex rel. Stimson Timber Co. v. Kuykendall,* 137 Wash. 602, 243 Pac. 834, U. S. Adv. Ops. 1927-28, p. 50. In this case, the supreme court of the United States, speaking through Mr. Justice Butler, said:

" 'Relator does not here contest the reasonableness of the rate; it does not question the power of the state or the authority of the Department to prescribe and enforce reasonable rates for transportation by common carriers on Puget Sound, and adjacent waters in Washington; it does not contend that, if the Shively Company was a common carrier of logs by tow boat, the agreement for transportation of relator's logs for less than the tariff would be valid, or that the order com-

plained of would not be valid. It is established that, consistently with the due process clause of the 14th Amendment, a private carrier cannot be converted into a common carrier by mere legislative command. *Frost & F. Trucking Co. v. Railroad Commission,* 271 U. S. 583, 592, 70 L. Ed. 1101, 1104, 47 A. L. R. 457, 46 Sup. Ct. Rep. 605; *Michigan Pub. Utilities Comm. v. Duke,* 266 U. S. 570, 577, 69 L. Ed. 445, 449, 36 A. L. R. 1105, 45 Sup. Ct. Rep. 191.' "

See, also, *Tyson & Brother v. Banton,* 273 U. S. 418, 71 L. Ed. 718, 47 S. Ct. 426, 58 A. L. R. 1236; *New State Ice Co. v. Liebmann,* 285 U. S. 262, 76 L. Ed. 747, 52 S. Ct. 371.

In *Frost & Frost Trucking Co. v. Railroad Commission,* 271 U. S. 583, 70 L. Ed. 1101, 46 S. Ct. 605, 47 A. L. R. 457, the supreme court of the United States had before it facts which are almost identical with those presented in the case at bar. A statute of the state of California provided for the supervision and regulation of transportation for compensation over public highways by automobiles, trucks, etc. Plaintiffs were engaged under a single private contract in transporting, for stipulated compensation, citrous fruit over the public highways between fixed termini. The California commission held that plaintiffs were subject to the provisions of the act and made an order compelling them to secure a certificate of public convenience and necessity. The case was appealed to the supreme court of California and the order of the commission affirmed by that court. *Frost v. Railroad Commission,* 197 Cal. 230, 240 Pac. 26.

The decision of the California court was reversed, holding that the act under review, as applied by the California court, violated the rights of plaintiffs as guaranteed by the due process clause of the fourteenth amendment, and that the privilege of using the public

highways of California in the performance of their contract was not and could not be affected by the condition imposed.

Of like import are *Smith v. Cahoon*, 283 U. S. 553, 75 L. Ed. 1264, 51 S. Ct. 582; *State ex rel. Public Utilities Commission v. Nelson*, 65 Utah 457, 238 Pac. 237, 42 A. L. R. 849; *State v. Smith*, 31 Ariz. 297, 252 Pac. 1011; *Hissem v. Guran*, 112 Ohio St. 59, 146 N. E. 808; and *Towers v. Wildason*, 135 Md. 677, 109 Atl. 471.

These decisions, and many others that could be cited to the same effect, prove clearly that a legislature cannot, by defining the phrase "common carriers," bring within the provisions of the act in question persons who are, as a matter of fact, private carriers.

To allow the legislature to make such definitions, would give it power to compel every traveler upon the highways of the state to procure certificates of convenience and necessity, and to comply with the rules and regulations of the department relative to common carriers. Such laws, to my mind, are unconstitutional.

The case of *Prater v. Department of Public Service*, 187 Wash. 335, 60 P. (2d) 238, is not apposite. That case involved the right to regulate a contract carrier; one who used the highways upon which to conduct his business of transporting commodities for a consideration. True, in that case this court stated:

"We have no hesitancy in holding that the transportation of property on the public highways for gain is a business affected with a public interest."

That principle had been upheld in *Stephenson v. Binford*, 287 U. S. 251, 77 L. Ed. 288, 53 S. Ct. 181, 87 A. L. R. 721 (1932).

However, in the case at bar, we are not concerned with the right of a state to regulate common or contract carriers, but rather whether a private carrier

may be compelled against his will to assume the burdens and duties of a common or contract carrier.

Judge Parker, speaking for the court in *Carlsen v. Cooney*, 123 Wash. 441, 212 Pac. 575, clearly demonstrated the reason for limiting the jurisdiction of any state department having to do with the regulation of motor vehicles upon the highways when he stated:

"Counsel for plaintiff seem to rest their argument against defendant's claimed right to operate his motor trucks over the public highways as he is operating them wholly upon the provisions of § 2, ch. 111, Laws of 1921, p. 339 (Rem. Comp. Stat., 6388), above quoted. Indeed, we would be at a loss to see what other possible ground of support their argument could have. If the language of that section stood alone, and the exception therein be ignored, it would, indeed, be difficult to escape the conclusion that it meant what counsel for plaintiff contends for, startling as such an expression of legislative intent would seem to be. If that section means in its present setting all that is claimed for it by counsel for plaintiff, then it means that nowhere upon the public highways of our state can a person, not engaged in hauling between fixed termini or over a regular route, haul in his motor vehicle any property of another for compensation, however special his contract for such hauling, or however casual such hauling might be. A farmer having an automobile could not lawfully haul for compensation for his neighbor goods from town to his neighbor's home which the latter might have occasion to have so hauled. One owning a motor truck, not engaged in the business which ch. 111 purports to regulate, could not lawfully haul wood in such truck for compensation on any portion of any public highway of this state. The humble expressman and drayman, so commonly in business in and about our towns and cities, could not, with his little automobile truck, lawfully haul for another for compensation; all simply because this seemingly far-reaching provision of § 2, of ch. 111, in terms so declares, when read apart from any thought of the real purpose of the act."

36

Appellants, many years before the legislature sought to restrict their operations, were engaged in conducting a private business enterprise under a contract between themselves and a company that owned timber lands, and they should not now have their private business interrupted and destroyed because the legislature desires to have them controlled. Such acts on the part of the legislature, as interpreted by this court and by the supreme court of the United States, violate the provisions of the fourteenth amendment.

For the reasons given, I dissent.

STEINERT and ROBINSON, JJ., concur with SIMPSON, J.

[1]Reported in 102 P. (2d) 242.