[No. 28334. *En Banc.* October 2, 1941.]

THE STATE OF WASHINGTON, *Appellant,* v. KITSAP COUNTY BANK, *Respondent.*[1]

[1]Reported in 117 P. (2d) 228.

The *Attorney General* and *William J. Millard, Jr., Assistant,* for appellant.

*Falknor, Emory & Howe,* for respondent.

*Meier & Meagher* and *Arthur G. Barnett, amici curiae.*

BEALS, J.—This action was instituted by the state of Washington against Kitsap County Bank, a corporation, as defendant. The complaint alleged that the commissioner of unemployment compensation and placement of the state of Washington had, prior to the institution of the action, demanded from defendant payment of contributions to the unemployment compensation fund, and the defendant had failed to pay the same. It was also alleged that the majority of stock of the defendant corporation was owned by F. E. Langer; that Mr. Langer also owned the majority of the stock of the First National Bank of Poulsbo; and that the two banks together employed eight or more persons for twenty weeks during the year 1940. Judgment was demanded for contributions alleged to be due. Defendant demurred to plaintiff's complaint, upon the ground that the complaint failed to state facts sufficient to constitute a cause of action. After argument the trial court sustained the demurrer, and plaintiff having elected to stand upon its complaint, judgment was entered dismissing the action with prejudice, from which judgment the state of Washington has appealed.

Error is assigned upon the ruling of the trial court

sustaining the demurrer, and upon the entry of judgment dismissing the action.

Section 19 (f), chapter 162, Laws of 1937 (Rem. Rev. Stat. (Sup.), § 9998-119 [P. C. § 6233-317] (f)) reads in part as follows:

"(f) 'Employer' means:
"(1) Any employing unit which in each of twenty different weeks within either the current or the preceding calendar year . . . has or had in employment eight or more individuals . . .
"(4) Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforcible means or otherwise) directly or indirectly by the same interest, or which owns or controls one or more other employing units (by legally enforcible means or otherwise), and which, if treated as a single unit with such other employing unit, would be an employer under paragraph (1) of this subsection."

(The section last quoted will be hereinafter referred to as subsection (4).)

It was contended below, and the trial court found, that the section of the statute above quoted violates the equal protection clauses of the Federal constitution and of the constitution of the state of Washington, which, respectively, read as follows:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Federal constitution, Art. XIV, § 1.

"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations." Washington state constitution, Art. I, § 12.

Respondent also contends that the statute relied upon by appellant cannot be enforced in this action, because it, in effect, imposes a tax upon an instrumentality of the Federal government, to wit, the First National Bank of Poulsbo. The trial court did not rule upon the latter phase of the case, being of the opinion that the statute is unconstitutional as based upon an unreasonable and discriminatory classification, and consequently within the ban of the Federal and state constitutions.

It is, of course, conceded that, according to the express terms of the section of the act above quoted, respondent could be classified as an "employer," within the meaning of the act, whereas other individuals and corporations employing less than eight employees, within the provisions of the act, but not similarly situated in regard to some other employing unit, as was respondent, would not be subject to the tax. The question to be determined is whether the legislature acted within its constitutional powers in classifying employers as it did by subsection (4) of the act above quoted.

It is, of course, the law that every presumption is in favor of the constitutionality of a legislative act, and that in matters of classification the legislature has a very broad discretion. *State Board of Tax Commissioners v. Jackson*, 283 U. S. 527, 75 L. Ed. 1248, 51 S. Ct. 540, 73 A. L. R. 1464; *Lindsley v. Natural Carbonic Gas Co.*, 220 U. S. 61, 55 L. Ed. 369, 31 S. Ct. 337, Ann. Cas. 1912C, 160; *State v. Jones*, 137 Wash. 556, 243 Pac. 1; *Elkins v. Schaaf*, 4 Wn. (2d) 12, 102 P. (2d) 230.

In the case of *State ex rel. Bacich v. Huse*, 187 Wash. 75, 59 P. (2d) 1101, this court, in considering a similar problem, said:

"To comply with these constitutional provisions, legislation involving classifications must meet and satisfy

two requirements: (1) The legislation must apply alike to all persons within the designated class; and (2) reasonable ground must exist for making a distinction between those who fall within the class and those who do not.

"Within the limits of these restrictive rules, the legislature has a wide measure of discretion, and its determination, when expressed in statutory enactment, cannot be successfully attacked unless it is manifestly arbitrary, unreasonable, inequitable, and unjust."

The recent case of *Bauer v. State,* 7 Wn. (2d) 476, 110 P. (2d) 154, is to the same effect.

Considering the statute here in question, it is obvious that it meets the first test referred to in the foregoing quotation from *State ex rel. Bacich v. Huse,* as all who are within the class established by subsection (4) are subject to the act in the same manner and to the same extent.

Study of the act in connection with the second requirement referred to in the case last cited, presents a more difficult question. In discussing the matter of what constitutes a reasonable basis for classification, in the course of the opinion in the *Bacich* case, we said:

"A classification, to be legal and valid, must rest on real and substantial differences bearing a natural, reasonable, and just relation to the subject matter of the act in respect to which the classification is made. The distinctions giving rise to the classification must be germane to the purposes contemplated by the particular law and may not rest upon a mere fortuitous characteristic or quality of persons, or upon personal designation. In short, the classification cannot be an arbitrary selection. These principles have been so frequently stated and so thoroughly recognized that it is unnecessary to cite any authority in their support."

A classification which is based upon a substantial difference, and which is reasonably calculated to carry out the purposes of the statute, is not arbitrary. The

purpose of the unemployment compensation act is to reduce "involuntary unemployment and the suffering caused thereby to a minimum." Rem. Rev. Stat. (Sup.), § 9998-102 [P. C. § 6233-302]. Obviously the reason for the enactment of subsection (4) was to prevent persons, who would otherwise fall within the classification of employers within the terms of the act, from evading the statute through various forms of disintegrated ownership and control, thus lessening the number of employees within the protection of the act. The subsection referred to, if valid, closes certain avenues by which the scope of the act could be narrowed, and aids in accomplishing one of the important purposes of the act, in broadening its field of operations. Any successful evasion of the act would itself result in unjust discrimination and inequality of administration.

Respondent argues that to state that the purpose of the subsection referred to was to prevent evasions of the act is to indulge in pure speculation. Of course the legislature did not, in enacting the statute, state in each section the precise objective which that section was intended to attain, but it is not legislative practice to make such statements. A study of subsection (4), in the light of the remainder of the unemployment compensation act, and consideration of the section together with the expressed and manifest purpose of the statute, renders the purpose of the subsection plain. Contemplation of some of the practical difficulties in the administration of the act renders the matter even clearer. Our conclusion in this regard is supported by the recent opinion of the supreme court of Connecticut, in the case of *New Haven Metal & Heating Supply Co. v. Danaher*, 21 Atl. (2d) (Conn.) 383, in which case the court referred to the provision in the statute of Connecticut comparable to subsection (4) of the act

of this state, as having been by the legislature expressly added to the statute as an amendment, for the purpose of preventing evasive practices which were being adopted by employers in order to avoid falling within the terms of the statute.

In any event, if the question of the existence of a sound basis for the inclusion of the statute referred to be considered doubtful, such doubt must be resolved in favor of the validity of the legislative act.

"When the classification in such a law is challenged, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed." *Elkins v. Schaaf, supra.*

"The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, . . . or if any state of facts reasonably can be conceived to sustain it." *State Board of Tax Commissioners v. Jackson,* 283 U. S. 527, 75 L. Ed. 1248, 51 S. Ct. 540, 73 A. L. R. 1464.

"A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it." *Carmichael v. Southern Coal & Coke Co.,* 301 U. S. 495, 81 L. Ed. 1245, 57 S. Ct. 868, 109 A. L. R. 1327.

It is argued by respondent in the case at bar that the complaint contains no allegation concerning any attempted evasion of the law. This does not concern respondent's status as affected by the statute. The legislative classification being based upon a sound reason, and the statute including no arbitrary distinction or classification, all who fall within the limits of the class defined must be treated uniformly.

Respondent argues that the classification as estab-

lished by the act, in so far as it is contended that the act embraces respondent, is arbitrary and capricious. The statute cannot be so classified. The classification which respondent criticizes rests upon a reasonable ground of distinction, and is calculated to effect a valid legislative purpose. It is not a prerequisite to the enforcement of such an act in each individual case, that the one against whom it is sought to be enforced be actually engaged in some practice or scheme intended to accomplish an evasion of the law. The possibility that some persons may follow such evasive practices may be sufficient justification for the classification, and the classification according to the terms of the statute being justified, it applies to all, regardless of the character of the operation or organization. *Purity Extract & Tonic Co. v. Lynch*, 226 U. S. 192, 57 L. Ed. 184, 33 S. Ct. 44; *Hebe Co. v. Shaw*, 248 U. S. 297, 63 L. Ed. 255, 39 S. Ct. 125. As this court said in the case of *Elkins v. Schaaf, supra*:

"A classification which has some reasonable basis does not offend against the equal protection clause of the fourteenth amendment merely because it results in some inequality."

We again call attention to the case of *State Board of Tax Commissioners v. Jackson, supra*, where the court said:

"The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction."

It cannot be held that the legislature, in failing to further refine the classification now under discussion so as to exempt therefrom persons who were not actually engaged in any evasive practice, was acting unreasonably, arbitrarily, or capriciously. The practical difficulties of devising a statute which would operate to prevent such practices, while not applying to other

cases, and the expense involved in connection with the administration of such refined legislation, afford ample justification for the broad inclusive features of subsection (4). *Carmichael v. Southern Coal & Coke Co., supra.*

Respondent argues that the classification is unreasonable because respondent is thereby required to pay a tax not laid upon competitors similarly situated, except that they are not jointly owned or controlled together with some other unit so as to be brought within the scope of the statute. Several cases involving alleged arbitrary classifications have been decided by the United States supreme court, the decisions being contrary to respondent's contentions. Some of these cases were discussed by that court in the case of *State Board of Tax Commissioners v. Jackson, supra.*

Counsel for the respective parties have cited several decisions of other courts construing unemployment compensation statutes. In four of these cases a question practically identical with that now before us was considered. In the case of *Independent Gasoline Co. v. Bureau of Unemployment Compensation,* 190 Ga. 613, 10 S. E. (2d) 58, the supreme court of Georgia held that a section of the Georgia statute comparable to the section of our law now under discussion was unconstitutional, the court being of the opinion that the law established an unreasonable and unfair classification. In the course of its opinion, the court said:

"It is contended, however, that the classification is justified as a means for enforcing the law and preventing its evasion. No doubt exists as to the right of the legislature to enact any legal provision that will prevent evasion and aid in the enforcement of a legal enactment. *Purity Extract & Tonic Co. v. Lynch,* 226 U. S. 192 (33 Sup. Ct. 44, 57 L. Ed. 184). But this rule should never sustain an act that places a burden upon innocent and helpless minority stockholders solely because of the status of the majority stockholder who

might seek to evade his legitimate obligations under the statute."

It might well be argued that, if the majority stockholder of a corporation seeks to evade his legitimate tax obligation under the statute, a minority stockholder cannot well complain if the corporation be brought within the scope of the law. Minority stockholders frequently suffer in one way or another through the acts of the holders of the majority of the corporate stock, and in all such cases the hardship, be it great or small, is borne by all stockholders, whether belonging to the majority or the minority group. We cannot follow the reasoning of the Georgia court in its holding that a classification which would otherwise be valid, is unconstitutional, because some interests may be adversely affected thereby. Some persons may complain, and often with seeming reason, of every legislative classification, but dividing lines must be drawn somewhere, and the question is not whether there is in fact some discrimination, but rather whether the discrimination is justified.

In the case of *Benner-Coryell Lumber Co. v. Indiana Unemployment Compensation Board*, 29 N. E. (2d) (Ind.) 776, the supreme court of Indiana held that the provision of the statute of that state similar to that here in question would be unconstitutional as construed and applied by the Indiana unemployment compensation board. The court held the law constitutional by construing the word control as importing something more than the mere ownership of a majority of corporate stock. Such a construction of the statute would render the administration of the law extremely difficult and complicated, as well as uncertain. The power of control unexercised would call for one classification, and a change of policy, including the exercise of the control, would require another. In view of the necessity

for an established administrative policy, it would seem that the power of control, and control, should be held to mean the same thing.

The supreme court of North Carolina, in the case of *State ex rel. Unemployment Compensation Commission v. Willis Barber & Beauty Shop*, 219 N. C. 709, 15 S. E. (2d) 4, after considering the Georgia and Indiana cases, held the provision of the North Carolina act, similar to the section of our code now under discussion, valid and not subject to attack under the equal protection clause of the constitution.

The most recent case upon this question is that of *New Haven Metal & Heating Supply Co. v. Danaher, supra*, in which the supreme court of Connecticut held a comparable provision of the statute of that state to be constitutional, for the reason that the classification "has a fair and substantial relation to the object of the legislation," in that it prevents evasion of the statute. The facts in the Connecticut case presented an evident attempt to evade the operation of the statute, but that does not detract from the force and authority of the opinion.

We are convinced that the better rule is laid down in the cases decided by the North Carolina and Connecticut courts, and that it should be held that Rem. Rev. Stat. (Sup.), § 9998-119 (f) (4), fixes a classification which is neither arbitrary nor capricious, and which is not vulnerable to attack on any constitutional ground urged or suggested by respondent.

The trial court erred in holding that subsection (4) is unconstitutional as in violation of the provisions of the Federal and state constitutions above quoted.

Respondent argues, in support of the trial court's order sustaining respondent's demurrer, that the First National Bank of Poulsbo is exempt from the operation of the act because of its status as a national bank.

This presents the question of the right of the state to require a national bank to contribute to the state unemployment compensation fund.

Assuming that from the reference in appellant's complaint to "the First National Bank of Poulsbo," we should consider, for the purpose of reviewing the question now before us, that the Poulsbo bank is in fact a national bank, we are not disposed to come to any final conclusion upon matters concerning the right of the state to exact unemployment compensation contributions from national banks generally, based upon the questions presented by respondent in its brief argument upon this phase of the case. The First National Bank of Poulsbo is not a party to this litigation, and it would not be bound by any decision which we could render. The complaint contains no allegation as to the number of employees of the Poulsbo bank, and it may employ eight or more persons, or a lesser number. In its memorandum opinion, the trial court adverted to this question, but did not pass thereon, holding that the case should be determined upon the constitutional questions above referred to.

The matter is of considerable importance, and is inadequately presented, both by respondent and appellant, in the briefs submitted.

We have considered respondent's argument in connection with this matter, based upon 26 U. S. C. A. §§ 1600, 1606 (b), and 1607 (a), and are of the opinion that, under the circumstances disclosed by the record in the case at bar, nothing therein precludes the state from collecting unemployment compensation contributions from a national bank having less than eight employees.

We are not called upon to express any opinion upon any question which might be presented when, after

respondent has been held liable to contribute to the unemployment compensation fund, because of Mr. Langer's stock ownership, it should be judicially determined that First National Bank of Poulsbo was exempt, by reason of its status as a national bank, from payment of similar contributions. Any question arising from such a situation, or from other situations which may arise, should be left open until presented.

For the reasons stated, the judgment appealed from is reversed and the cause remanded, with instructions to overrule respondent's demurrer.

MAIN, BLAKE, JEFFERS, and DRIVER, JJ., concur.

STEINERT, J. (dissenting)—Upon the ground assigned by the trial court and, further, for all the reasons urged by respondent, as they are referred to in the majority opinion, I dissent.

ROBINSON, C. J., and SIMPSON, J., concur with STEINERT, J.