[No. 29094. Department One. October 29, 1943.]

In the Matter of the Appeal of the TACOMA AUTO FREIGHT
DEPOT, INC., et al.[1]

*Eisenhower, Hunter & Ramsdell,* for appellants.

*The Attorney General, George W. Wilkins,* and *Frank W. Foley, Assistants,* for respondent.

[1]Reported in 142 P. (2d) 485.

GRADY, J.—This is a proceeding to determine the right of the commissioner of unemployment compensation and placement to recover contributions to the unemployment compensation fund for the period from January 1, 1940, through June 30, 1941, which he claimed were due and owing from three domestic corporations, the Tacoma Auto Freight Depot, Inc., the Interurban Auto Freight Co., Inc., and the Tacoma-Port Angeles Auto Freight, Inc.

The right of recovery of the claimed contributions depends upon whether it has been made to appear that, during the time in question, the three corporations bore such a relationship to each other that, collectively, they were within the terms and meaning of § 19 (f) (4) of chapter 162, Laws of 1937, p. 609 (Rem. Rev. Stat. (Sup.) § 9998-119 [P. C. § 6233-317]). This section was amended by § 16 (f) (4) of the Laws of 1939, p. 855. However, the portion of the section defining employer was vetoed, leaving the 1937 definition in full force and effect. The 1937 definition read as follows:

"(f) 'Employer' means:

"(4) Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforcible means or otherwise) directly or indirectly by the same interests, or which owns or controls one or more other employing units (by legally enforcible means or otherwise), and which, if treated as a single unit with such other employing unit, would be an employer under paragraph (1) of this subsection; . . ."

On appeal to the superior court, that court entered a judgment against the corporations, and they appeal to this court. In this opinion, we shall refer to the corporations as the appellants and to the commissioner as the respondent.

The stock ownership and the officers and directors of the respective corporations can best be portrayed by the diagram set out in respondent's brief:

TACOMA AUTO FREIGHT DEPOT

| Stock Ownership | Corporate Officers and Directors | Manager |
|---|---|---|
| Edna Potter 50 per cent | Edna Potter, Pres. * Mark Jones, Sec. * John H. Potter, Treas. | J. H. Potter |
| Anita Jones 50 per cent | Anita Jones, V. Pres. | |

* One share of stock each to qualify as director and officer.

INTERURBAN AUTO FREIGHT COMPANY

| Stock Ownership | Corporate Officers and Directors | Manager |
|---|---|---|
| Edna Potter 50 per cent | Edna Potter, Pres. * Mark Jones, Sec. | Mark R. Jones to January, 1939; subsequent |
| Anita Jones 50 per cent | * John H. Potter, Treas. Anita Jones, V. Pres. | to January, 1939, J. H. Potter |

* One share of stock each to qualify as director and officer.

TACOMA-PORT ANGELES AUTO FREIGHT

| Stock Ownership | Corporate Officers and Directors | Manager |
|---|---|---|
| J. H. Potter 33-1/3 per cent | J. H. Potter | Mark R. Jones |
| Mark R. Jones 33-1/3 per cent | Mark R. Jones | |
| Frank E. Johnston 33-1/3 per cent | Frank E. Johnston | |

During the time material here, John H. Potter and Edna Potter were husband and wife. Mark R. Jones and Anita Jones were husband and wife. Frank E. Johnston was not related to any of the other parties. Mrs. Potter and Mrs. Jones are sisters, and the corporate stock owned by them respectively was the separate property of each. The stock in the names of John H. Potter and Mark R. Jones was the property of the respective communities. The qualifying shares were owned by the wives of the respective parties in whose names the stock appears on the books of the corporations.

The business of the Tacoma Auto Freight Depot was that of operating a place in Tacoma where a number of auto freight lines, including the two other corporations mentioned here, brought freight and exchanged it from one line to another or delivered it to a local consignee. The Interurban Auto Freight Company was a freight carrier and operated between Tacoma, Eatonville, and way points. The

Tacoma-Port Angeles Auto Freight, also a freight carrier, operated between Tacoma and Port Angeles.

The Tacoma Auto Freight Depot and the Interurban Auto Freight each paid salaries to John H. Potter, Edna Potter, and Anita Jones, also some small compensation to Mark R. Jones. Frank E. Johnston performed services as auditor and received a monthly compensation. We infer, though this does not appear affirmatively in the record, that Johnston audited all three corporations. The employees of the Tacoma Auto Freight Depot and those of the Interurban Auto Freight combined did not total eight or more, but the employees of the three corporations combined totaled more than eight.

It is the contention of appellants that the three corporations were neither owned nor controlled, directly or indirectly, by the same interests, and, therefore, did not constitute an employing unit. We think the contention is correct as to the ownership the law contemplates, because the stock in two of the corporations was the separate property of Edna Potter and Anita Jones, and two-thirds of the stock in the third corporation was owned by the communities composed of the two women and their respective husbands.

On the question of control, "directly or indirectly by the same interests," it is urged that, in order to be regarded as an employing unit, each corporation must have not only the power of control over the others, but also the actual control, as the power of control and control mean the same thing. They negative this by pointing out that Anita Jones and Edna Potter might at any time have removed their husbands as directors of the Tacoma Auto Freight Depot and the Interurban Auto Freight Company and discharged John H. Potter as manager.

It was said by this court in *State v. Kitsap County Bank,* 10 Wn. (2d) 520, 117 P. (2d) 228, that, in view of the necessity for an established administrative policy, it would seem that the *power of control* and control as used in the definition of employer should be held to mean the same thing. But this was not necessary in deciding the questions pre-

sented, nor did we so hold or decide. We merely made a suggestion in the interest of what would appear to be cer-tain and definite administration of the law.

■ In the case before us, the appellants pooled their interests and business activities and adopted and pursued a method of joint management and operation of two auto freight lines to and from a central freight receiving, exchange, and delivery depot, the latter also serving other auto freight lines. They were operated and controlled by and through an interlocking directorate and official personnel, and the active business management of all of them was delegated to John H. Potter and Mark R. Jones. Each of the three appellants was an employing unit, and, when they pooled their business activities, as they did here, and vested the control of a joint activity in an interlocking directorate and official personnel, it seems clear to us that it follows that the employing units were controlled directly by the same interests; and the fact that this control might at any time have been taken away by the action of the stockholders of the corporate employing units, can make no difference. So long as the respective employing units chose to operate in the manner disclosed by the record, they were collectively an employer and subject to the making of contributions to the unemployment fund.

■ It is further claimed by the appellants that, if it is held the three corporations collectively constituted an employer, then § 19 (f) (4) violated Art. XIV, § 1, of the United States constitution and Art. I, § 12, of the constitution of the State of Washington, the argument being:

"Under the facts in this case if it is determined that all three corporations may be affiliated under the definition of 'Employer' within the meaning of this act, whereas other individuals and corporations employing less than eight employees within the provisions of the act, but not similarly situated in regard to some other employing unit, and therefore not subject to the tax, then we submit that such a classification violates the express provisions of the Constitution above quoted, in that it would enable these other individuals or corporations to do business in competition

with the petitioning corporations with an immunity not granted them."

In defining employer, it was the evident purpose of the legislature to exact contributions to the unemployment compensation fund from those who combine their business operations into a joint activity owned or controlled directly or indirectly by the same interests, and, by so doing, eight or more persons were collectively employed; and to exact also contributions from a business enterprise that might seek to evade making the contributions by splitting up the business operations into parts or units, so that each would employ less than eight and have the appearance, at least, of not being owned or controlled by the same interests.

By so doing, the legislature has not in any way imposed upon those interested in the activities involved any discriminating burden, nor does it deprive them of any rights or privileges to which they are entitled. In the case of those who pool their interests, this is a purely voluntary act on their part, and, in the case of a dividing up of a business activity, it is well within the legislative power to prevent evasion of lawful obligations imposed.

The constitutional validity of the classifications made by the act of the legislature was before this court in *State v. Kitsap County Bank*, 10 Wn. (2d) 520, 117 P. (2d) 228, *supra*, and, while the facts in that case were not the same as in this one, the principles of constitutional law were substantially so. In that case, which was heard *En Banc*, the pertinent authorities were reviewed and discussed, and it was held that the classifications made were within the power of the legislature to make.

We are invited to reconsider that case in the light of the facts of this one and to hold the act unconstitutional in so far as they are concerned here. But we are satisfied with the conclusions reached by us in that case, and all that is said in the opinion of the court on the constitutional questions involved is applicable here. The judgment is affirmed.

SIMPSON, C. J., STEINERT, JEFFERS, and MALLERY, JJ., concur.