[No. 29229. *En Banc.* June 6, 1944.]

*In the Matter of the Appeal of* PACIFIC COAST ADJUSTMENT COMPANY, INC., *Respondent,* v. THE COMMISSIONER OF UNEMPLOYMENT COMPENSATION AND PLACEMENT, *Appellant.*[1]

*The Attorney General* and *George W. Wilkins, Assistant,* for appellant.

*T. H. McKay,* for respondent.

MALLERY, J.—This is an appeal by the commissioner of unemployment compensation and placement from a judgment of the superior court of Grays Harbor county, revers-

[1]Reported in 147 P. (2d) 820.

ing the decision of the commissioner that the Pacific Coast Adjustment Company, Inc., a Washington corporation, was an "employer" under the Washington unemployment compensation act.

If the Pacific Coast Adjustment Company, Inc., was properly joined, under the provisions of Laws of 1937, chapter 162, p. 609, subd. 19(f) (4) (Rem. Rev. Stat. (Sup.), § 9998-119 [P. C. § 6233-317]), with the National Association of Creditors, Inc., another Washington corporation, thus constituting the Pacific Coast Adjustment Company, Inc., an employer under the Washington unemployment compensation act, it would then be liable in the amount of $690.32 for unemployment compensation contributions.

The stipulated facts are:

"The Pacific Coast Adjustment Company, Inc., hereinafter referred to as the 'Aberdeen Company' is a Washington corporation engaged in business as a collection agency in Aberdeen. The company has 100 shares of capital stock. All of the outstanding stock at the present time belongs to Mr. E. N. Faulk and wife. Mr. E. N. Faulk, who, with his wife, owns ninety-nine shares or all of the outstanding stock of the Pacific Coast Adjustment Inc., is president of said company and as such clears all mail and files coming into the office. He further divides the work up amongst the employees of the corporation, is on no stated monthly wage or salary but draws upon the funds of the corporation as profits accrue to the business. In this manner, eventually all profits go to him. No other person has any interest in the company outside of E. N. Faulk and his wife. The only compensation received by Mr. Faulk from the business is the drawings of moneys received from the operation of the business. These amounts vary from month to month. There is no difference in the manner in which the business is conducted other than if it were conducted by E. N. Faulk as an individual instead of a corporation. The amounts drawn by Mr. Faulk are not considered by him as salary or wages. Mr. Faulk is voluntarily paying social security to the Federal government as and for old age security. The income tax records of the Pacific Coast Adjustment Company, Inc., during the period in question, indicated that the sums were paid to Mr. Faulk as compensation as an officer of the corporation.

"The company has not, in any calendar year during the period in question, had in employment eight or more individuals during twenty different weeks but did have in its employment in the year 1937 eight or more individuals performing services for it in this state.

"The National Association of Creditors, Inc., a Washington corporation, hereinafter referred to as the 'Tacoma Company' is engaged in the collection business in Tacoma. This company has at all times since January 1, 1937, been a liable employer under the Unemployment Compensation Act.

"E. N. Faulk and wife own fifty-one shares of the capital stock of the Tacoma Company, and T. E. Faulk, a brother of E. N. Faulk, owns forty-nine shares and is president and was also manager from 1923 to September, 1940. T. E. Faulk has no interest in the Aberdeen Company.

"Although E. N. Faulk and wife own the majority of the capital stock of the Tacoma Company and Mr. E. N. Faulk is vice-president of the company, they have had no actual connection with the management or operation of this concern since 1923. They have received no salary from this company since that year and have received no dividends or other income therefrom since about 1930. The management and operation of this company have at all times been in T. E. Faulk.

"The two concerns keep separate books of record and engage the services of different accountants to audit their records and their business operations are entirely separate. They own no property in common nor do the employees of one perform services for the other. Their business transactions with each other are no different than those they have with other similar collection agencies."

The one affirmative fact that E. N. Faulk and wife own ninety-nine per cent of the stock of the Pacific Coast Adjustment Co., Inc., and fifty-one per cent of 'the stock of the National Association of Creditors, Inc., brings them under the provisions of Rem. Rev. Stat. (Sup.), § 9998-119 (f) (4), which is as follows:

"(4) Any employing unit which together with one or more other employing units, *is owned or controlled (by legally enforcible means or otherwise) directly or indirectly by the same interest[s].* . . . and which, if treated as a single unit with such other employing unit, would be an

*employer* under paragraph (1) of this subsection; . . ."
(Italics ours.)

The part in italics may be disparately stated as (1) owned directly or indirectly by the same interests; (2) controlled (by legally enforcible means) directly or indirectly by the same interest; (3) controlled (otherwise) directly or indirectly by the same interests.

This case is governed by *State v. Kitsap County Bank,* 10 Wn. (2d) 520, 117 P. (2d) 228. In that case, Mr. F. E. Langer owned a majority of the stock in the Kitsap County Bank and in the First National Bank of Poulsbo, which together employed eight or more persons for twenty weeks during the year 1940. No other affirmative facts appeared. This was held to bring the banks under the act as an "employer" with liability for unemployment compensation contributions.

In holding that he came under the first of the above disparate statements, the court, commenting on majority stockholders as "owners" for the purposes of the statute, said:

"It might well be argued that, if the majority stockholder of a corporation seeks to evade his legitimate tax obligation under the statute, a minority stockholder cannot well complain if the corporation be brought within the scope of the law. Minority stockholders frequently suffer in one way or another through the acts of the holders of the majority of the corporate stock, and in all such cases the hardship, be it great or small, is borne by all stockholders, whether belonging to the majority or the minority group."

On the same question, this court said, in *In re Tacoma Auto Freight Depot, Inc.,* 19 Wn. (2d) 334, 142 P. (2d) 485, holding that the three corporations were not "owned" by the same interests:

"We think the contention is correct as to the ownership the law contemplates, because the stock in two of the corporations was the separate property of Edna Potter and Anita Jones, and two-thirds of the stock in the third corporation was owned by the communities composed of the two women and their respective husbands."

These cases lay down the rule that if the same interests own a majority of the stock of several corporations they are

"employers" under disparate statement number one. If the same interests do not own a majority of the stock of several corporations they are not "employers" under disparate statement number one but nevertheless may be "employers" under disparate statement number three.

In *In re Tacoma Auto Freight Depot, Inc., supra,* the court, in commenting on the relation of the foregoing second and third disparate statements, said:

"It was said by this court in *State v. Kitsap County Bank,* 10 Wn. (2d) 520, 117 P. (2d) 228, that, in view of the necessity for an established administrative policy, it would seem that the *power of control* and control as used in the definition of employer should be held to mean the same thing. But this was not necessary in deciding the questions presented, nor did we so hold or decide. We merely made a suggestion in the interest of what would appear to be certain and definite administration of the law.

"In the case before us, the appellants pooled their interests and business activities and adopted and pursued a method of joint management and operation of two auto freight lines to and from a central freight receiving, exchange, and delivery depot, the latter also serving other auto freight lines. They were operated and controlled by and through an interlocking directorate and official personnel, and the active business management of all of them was delegated to John H. Potter and Mark R. Jones. Each of the three appellants was an employing unit, and, when they pooled their business activities, as they did here, and vested the control of a joint activity in an interlocking directorate and official personnel, it seems clear to us that it follows that the employing units were controlled directly by the same interests; and the fact that this control might at any time have been taken away by the action of the stockholders of the corporate employing units, can make no difference. So long as the respective employing units chose to operate in the manner disclosed by the record, they were collectively an employer and subject to the making of contributions to the unemployment fund."

Thus it appears that, if there is actual control, even though legally unenforcible, it is sufficient to bring the corporation under the act as "employers" under the third disparate statement, even though the first and second did not apply.

The appellant contends that the power to control should not be held to be the same thing as actual control and that, since it did not exercise its power to control, it does not come under the act as an "employer". Granting this distinction to be sound can avail appellant nothing, since it still falls under disparate statement number one by reason of the ownership of a majority of the stock of both corporations. This brings it under the rule of *State v. Kitsap County Bank, supra.*

The judgment is reversed.

BEALS, BLAKE, ROBINSON, JEFFERS, and GRADY, JJ., concur.

MILLARD, J. (dissenting)—The majority holds that two corporations, neither of which alone is an employer under the act, if fifty-one per cent of the shares of stock in each corporation is owned by one person or the same group of persons, then each corporation is an employer and subject to the unemployment tax exaction, even if the corporations are engaged in diverse businesses. The majority opinion is to the effect that a bank and a slaughter house, a bank and a tavern, or a slaughter house and a hotel, although businesses of such diverse location and nature that there is no substantial unification, would be within the purview of the unemployment compensation act. With that I cannot agree.

The majority view is contrary to *In re Tacoma Auto Freight Depot, Inc.,* 19 Wn. (2d) 334, 142 P. (2d) 485, where we held that it was the evident purpose of the legislature to exact contributions to the unemployment compensation fund from *only* those who combined their business operations into a joint activity owned or controlled directly, or indirectly, by the same interests.

In the case at bar, there is no evidence indicating actual joint control. Even in this time of utter disregard of basic legal principles and the sweeping away, on the score of expediency, constitutional safeguards, I cannot agree that such arbitrary classification as that for which the appellant

contends is valid. The need of funds or other property for so-called worthwhile projects or programs cannot justify the arbitrary unconstitutional taking of the citizen's property.

The judgment should be affirmed.

SIMPSON, C. J., and STEINERT, J., concur with MILLARD, J.

---

July 18, 1944. Petition for rehearing denied.