**GOVERNMENT OF THE VIRGIN ISLANDS**

v.

**MRS. EVAN FRANCOIS, Defendant**

Municipal Court of the Virgin Islands
Div. of St. Thomas and St. John

August 20, 1964

PETER J. O'DEA, Assistant Attorney General, *for Government*

JAMES A. BOUGH, *for defendant*

MICHAEL, *Municipal Judge*

Traffic Ticket No. 758

Municipal Court of St. Thomas and St. John

August 20, 1964

The defendant in the above-entitled case, charged with parking in an area reserved for the Department of Commerce only, through her attorney, entered a plea of NOT GUILTY, and urges upon the court the quashing of the Traffic Ticket on two grounds: (1) that the reservation of the area for the Department of Commerce where the defendant parked her vehicle was an invalid exercise of authority, as it did not meet the constitutional requirement of equal protection of the laws; (2) that the requirement of publication of special traffic regulations as required by 20 V.I.C. §§ 491 and 497 were not met.

Both the attorney for the defendant, James A. Bough, Esquire, and the attorney for the Government of the Virgin Islands, Peter J. O'Dea, Assistant Attorney General, submitted memoranda of law.

There is no question that if the parking reservation made by the Commissioner of Public Safety for the use of the Department of Commerce is invalid on either of the two grounds raised by the defendant, the Traffic Ticket issued to the defendant should be quashed.

With reference to the first point, may the Commissioner of Public Safety, under his power to issue traffic regulations, designate certain parking areas for the use of certain offices of the Government only?

Title 20 V.I.C. § 491 (a) provides that:

". . . operators of motor vehicles shall observe the general traffic regulations contained in the Police Regulations set out in Title 23, and such special regulations as may from time to time be published by the Commissioner of Public Safety."

Counsel for the defendant does not contend that the Commissioner of Public Safety does not have authority to issue special traffic regulations, but not the one he issued in this case.

In their memoranda, counsel for both parties called to the court's attention the case of Commonwealth v. Sargent, 117 N.E.2d 154, wherein the regulation issued by the Traffic Commission of the City of Boston, forbidding parking to the general public on one side of a street, but reserving it for members and officers of the General Court, was upheld.

Commenting on that case, which notice read: "No parking, Reserved for Members of the General Court", and comparing it with the notice in the case at bar, which reads: "Parking Department of Commerce Only", which notice to this court includes all officers and employees of the Department, counsel for the defendant opines that

15

the text of this latter sign could be held to meet the constitutional requirement under the Massachusetts case.

To this court it *does* meet such requirement, for the existing traffic situation which motivated the Boston Traffic Commission to create the exception in favor of the personnel of the General Court in that case obtains here, and perhaps to a greater extent.

█ No one familiar with traffic conditions in the Town of Charlotte Amalie, where the Department of Commerce was located and where the sign was at the time the Traffic Ticket was issued, and is also acquainted with the activities of said Department, would honestly claim that the exception created in its favor was arbitrary. This Department is one of the most active and important of the local government, and the economic growth and development of the Territory depend to a large extent upon its activities, especially with respect to tourism and the establishment of new industries.

In the Massachusetts case members and officers of the "General Court", the legislature, were involved. Ordinarily, it would not appear as if the personnel of this office would have very much use for their motor vehicles once they have reached their offices. On the other hand, the activities of the Commerce Department, with its various divisions, would entail more frequent movement of its officers and assistants during office hours, due to the duties they are called upon to perform. Consequently, the reservation made by the Commissioner of Public Safety in this case seems to be as justifiable as the reservation made in the Massachusetts case.

Interpreting the equal protection clause, the Supreme Court of the United States, in the case of Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 55 L.Ed. 369, 31 Sup. Ct. 337, states as follows:

"The equal protection clause of the Fourteenth Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. When the classification of such law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. One who assails the classification in such a law must carry the burden of showing that it does not rest upon reasonable basis, but in essentially arbitrary.

"Equal protection does not . . . prohibit differences in treatment where there is a basis for those differences reasonably related to purposes which the regulation seeks to accomplish." Bogni v. Perotti, 112 N.E. 853; Marcus Brown Holding Co. v. Feldman, 269 Fed. 306, 313. See also Hays v. Missouri, 120 U.S. 68, 71, 30 L.Ed. 578; State v. Kitsop County Bank, 117 P.2d 228, 232, 233.

The second point raised by counsel for the defendant addresses itself to the insufficiency of the publication of the regulation, in that it was not published in the Virgin Islands Register.

Title 3 V.I.C. § 933 provides, *inter alia*, that "no regulation . . . made by an agency of this Government shall become effective unless it shall also first have been published in the V. I. Register."

The Government does not deny that publication of the *particular* regulation was not made under this section. It contends, however, that such publication was not required, inasmuch as the regulation in question comes under the exception provided in 3 V.I.C. § 911(b), as follows:

" 'Regulation' means every rule, regulation or order, amendments thereto or revocation thereof, made by any agency, *except a rule, regulation or order which* . . . . (Emphasis added.)

* * *

17

"(2) relates to the use of public works, including streets and highways, under the jurisdiction of *any* agency when the effect of such order is indicated to the public by means of signs or signals; . . .". (Emphasis added.)

It will be noted that this latter sec. 911(b), comes before sec. 933, the one requiring publication generally. Therefore, it must be presumed that the legislature would not do a futile thing, so that when sec. 933 was being considered, it had in mind the exception noted above in sec. 911(b)(2).

Counsel for the defendant interprets sec. 911(b)(2) as relating only to signs of a temporary nature, such as those posted by the Public Works Department or the Public Safety Department for purposes of repairs and special functions.

A cursory glance of the section may mislead one to such an interpretation, accustomed as we are to temporary signs for such purposes. However, in so interpreting it, inadvertently this "temporary" aspect, not found in the section, is read into it, although it is present only in the subconscious mind of the person thus interpreting it.

 This section specifically excepts from the definition of "regulation", and as such, from publication as required by 3 V.I.C. § 933, those rules, regulations or orders relating to the use of streets and highways under the jurisdiction of *any* agency when the effect to such order is indicated to the public by means of signs or signals. The sign in question does just that.

Moreover, to supplement 3 V.I.C. § 911(2), 20 V.I.R.&R. §§ 491–51 and 491–53 were adopted, as follows:

Sec. 491–51. *"All traffic and parking signs* posted by the Department of Public Safety or painted in a conspicuous way on buildings, roads, streets, etc. (including traffic signal lights), one-way signs, stop signs, giving traffic or parking directions, shall have the force and effect of law." (Emphasis added.)

Sec. 491–53(c). "Parking of motor vehicles on highways and

18

roads, not specifically controlled by law or regulations shall be in accordance with parking signs, if any, posted by the Department of Public Safety."

The above special traffic regulations were adopted by the Department of Public Safety and filed by the Commissioner with the Government Secretary.

██ While the validity of the sign in question may be upheld solely on the authority of 3 V.I.C. § 911(b)(2), the objection to its nonpublication raised by counsel for the defendant, to the effect that "It is inconceivable that special traffic regulations of the nature of the sign involved in this case could only be ascertained by travelling from location to location within the Town of Charlotte Amalie, rather than by research through the Virgin Islands Register," has been met by the publication of the above two sections.

It might be well to call attention to the fact that the "travelling" complained of by the defendant to ascertain the location of the sign in question would also relate to other signs, such as traffic signal lights, stop signs, etc., as these come under the same section.

For the reasons stated it is the opinion of this court that the regulation issued by the Commissioner of Public Safety, under authority of 20 V.I.C. § 491(a), reserving the area for parking in favor of the Department of Commerce, and indicated by a sign under authority of 3 V.I.C. § 911(b)(2), was a valid exercise of his authority.